**Thomas CROWDER, Plaintiff-Appellant,**

v.

**Russell E. LASH, Defendant-Appellee.**

**No. 80–2220.**

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 26, 1981.

Decided Aug. 26, 1982.

Rehearing and Rehearing En Banc Denied Nov. 8, 1982.

Ivan E. Bodensteiner, Project Justice & Equality, Valparaiso, Ind., for plaintiff-appellant.

Charles N. Braun, II, Jeffrey G. Fihn, Deputy Attys. Gen., Indianapolis, Ind., for defendant-appellee.

Before PELL and CUDAHY, Circuit Judges, and CAMPBELL,* Senior District Judge.

CUDAHY, Circuit Judge.

In this civil rights action, plaintiff Thomas Crowder, a former inmate at the Indiana State Prison, appeals from the entry of a directed verdict which denied liability as to all defendants except one and which removed from jury consideration all constitutional issues except plaintiff's eighth amendment claim. Crowder also appeals from a jury verdict in favor of the one remaining defendant, Warden Russell Lash, on the eighth amendment issue, alleging various procedural and evidentiary errors. We affirm in part, and reverse in part.

## I

Plaintiff Thomas Crowder entered the Indiana State Reformatory on December 13, 1967, following his conviction for conspiracy to commit robbery. He was transferred to the Indiana State Prison at Michigan City on August 4, 1968. On June 20, 1974, Crowder was released from custody, having spent a total of four out of his seven years in prison confined to the D. O. (Deputy Office) Seclusion Unit as punishment for various prison infractions, ranging from assaulting an officer to insolence.

Crowder's seclusion was uninterrupted for nearly forty-six months. Substantial portions of his detention were served in a strip cell or in one of the other cells located on the lower level of the D. O. Unit, where water for both sinks and toilet facilities was totally controlled by the prison guards.

The regular cells in the D. O. Unit were approximately six feet by nine feet and contained only a cot, a sink and a makeshift toilet. The floor and three of the walls were concrete and the fourth wall was barred; there was a solid wooden door approximately four feet beyond and outside the bars. The strip cells were identical to the regular cells except that the cots had been removed and bedding was brought in only at night. When Crowder was confined to a strip cell, the light was turned off and the wooden door was kept closed. Crowder was not allowed to correspond by letter or receive visitors and he was not permitted to have reading material or personal possessions.

Because the window in each of the D. O. Unit cells had been covered with a metal plate, lighting and ventilation were poor. The lack of space and ventilation made it difficult to move freely and to breathe, limiting the feasibility of exercise. The close quarters, together with the irregularity of showers and the sometimes irregular flushing of toilets, gave rise to offensive odors throughout the unit. The cells were noisy, dirty and infested with insects.

---

* The Honorable William J. Campbell, Senior District Judge of the Northern District of Illinois, is sitting by designation.

Moreover, mace was not infrequently used on prisoners who were creating a disturbance, and, following a macing, the wooden doors to the prisoners' cells were closed. Crowder claimed that these conditions, coupled with the disproportionate amount of time he was forced to spend in D. O. seclusion, constituted a violation of his eighth amendment right to be free of cruel and unusual punishment.

At trial, plaintiff also presented considerable evidence about the "disciplinary hearings" by which he was repeatedly sentenced to seclusion in the D. O. Unit.[1] Crowder testified that the disciplinary committee would call him in, read the charge, find him guilty and sentence him. He stated that he was given no opportunity to deny the accusation or to explain his action, and that no evidence was presented at the "hearing." On one occasion, defendants Moore and Devero held such a "hearing" in Crowder's absence, at which they found Crowder guilty, and sentenced him to continued seclusion. Crowder claimed that these procedures violated the fourteenth amendment's due process guarantee and that they were also part of the "totality of circumstances" which bore on his cruel and unusual punishment claim.

Crowder likewise presented evidence of unexplained censorship of his general correspondence and reading material.[2] He further alleged that defendants Lash, Moore and Devero interfered with his free exercise of religion and with his access to the courts by repeatedly denying him the opportunity to correspond with ministers, a law student and representatives of three organizations concerned with prison conditions. Letters from Crowder to court personnel never reached their destination. Letters to him from attorneys were delayed and opened. Requests for law books and legal materials were denied and Crowder was not permitted access to the prison writ room. Law books that Crowder managed to obtain from other sources, as well as his Bible, were confiscated and never returned. Crowder alleged that these actions violated his first amendment rights, as well as his fourteenth amendment right of access to the judicial system.

Plaintiff Crowder filed his *pro se* complaint for damages under 42 U.S.C. § 1983 on November 8, 1973. He named as defendants Robert Heyne, Commissioner of Corrections of the State of Indiana; Russell Lash, Warden; Charles Moore, Assistant Warden; and James Devero, Director of Classifications of the Indiana State Prison. In his original complaint, Crowder sued the defendants both individually and in their official capacities, but since that time, this action had proceeded against these defendants in their individual capacities only.

A jury trial on Crowder's damage claims was conducted from March 10, 1980 through March 13, 1980. Following the close of plaintiff's evidence, the district court granted the state's motion for a directed verdict, on grounds of lack of personal responsibility, as to defendants Heyne, Moore, and Devero, and further removed from the case all issues except for plaintiff's eighth amendment claim.[3] On March 14, 1980, the

---

1. Defendants disputed plaintiff's testimony regarding the character of these hearings, as well as plaintiff's allegations as to the availability of visits, correspondence, reading materials and access to the courts. Because we are reviewing the propriety of a directed verdict in favor of the defendants on these issues, we view the facts in the light most favorable to the plaintiff.

2. For example, *The Prophet* by Kahlil Gibran and *The Odyssey* by Homer were banned.

3. The district court appears to have removed these issues from the case on the grounds that Crowder had presented no evidence indicating that the defendants had violated any of his clearly established first or fourteenth amendment rights. Thus, the district court stated:

And, number two, I rule as a matter of law that there is no arguable evidence to show a violation by any of these defendants as required by *Adams v. Pate* [445 F.2d 105 (7th Cir. 1971)] of any of the due process rights in the disciplinary proceedings that put Crowder into the D. O. unit. I am taking those out of the case and I am directing a verdict on these at this time.

. . . .

Likewise, with regard to correspondence and books, there is no evidence to support a conclusion that the law as it was in 1969 through '73 was violated by any of these

jury returned a verdict in favor of defendant Lash on the eighth amendment issue. Judgment was entered on March 14, 1980. Plaintiff's motion for judgment notwithstanding the verdict or, in the alternative, for a new trial was denied by the district court on July 23, 1980.

Plaintiff then filed this appeal contending: (1) that the district court erred in sustaining defendants' motions for a directed verdict; (2) that defendants should have been precluded, by collateral estoppel principles, from relitigating the constitutionality of the conditions under which plaintiff was confined; (3) that the district court erred in instructing the jury in several respects; and (4) that the district court improperly sustained defendants' objections to any inquiry regarding the vacating and closing of the D. O. seclusion unit. Because we find the first two issues dispositive of this appeal, we address only these issues in turn.

## II

 As this court has emphasized on numerous occasions, a motion for a directed verdict should be granted only where the evidence, together with all inferences that reasonably could be drawn from it, considered most strongly against the moving party, does not create a jury question. *Hampton v. Hanrahan*, 600 F.2d 600, 607–08 (7th Cir. 1979), *rev'd in part on other grounds*, 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980); *Oberlin v. Marlin American Corp.*, 596 F.2d 1322, 1326 (7th Cir. 1979); *Hohmann v. Packard Instrument Corp.*, 471 F.2d 815, 819 (7th Cir. 1973). A directed verdict in favor of a defendant, then, is proper only if reasonable people, viewing the facts most favorably to the plaintiff and disregarding conflicting unfavorable testimony, could not conclude

that the plaintiff has made out a prima facie case. *Cannon v. Teamsters & Chauffeurs Union*, 657 F.2d 173, 175–76 (7th Cir. 1981); *Clark v. Universal Builders, Inc.*, 501 F.2d 324 (7th Cir.), *cert. denied*, 419 U.S. 1070, 95 S.Ct. 657, 42 L.Ed.2d 666 (1974).

 To recover damages under 42 U.S.C. § 1983 a plaintiff must prove that the defendants acted under color of state law, that their actions resulted in a deprivation of the plaintiff's constitutional rights, and that the action of the defendants proximately caused the constitutional violation. *See Martinez v. California*, 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980); *Reichenberger v. Pritchard*, 660 F.2d 280, 284–85 (7th Cir. 1981). The law in this circuit is unsettled whether the plaintiff must also prove, or, in the alternative, whether the defendants must disprove, that the constitutional right in question was clearly established at the time of the alleged deprivation, that the defendants knew or should have known of the right and that the defendants knew or reasonably should have known their conduct violated the constitutional norm. *Compare Murray v. City of Chicago*, 634 F.2d 365, 367 (7th Cir. 1980), *cert. granted*, 454 U.S. 962, 102 S.Ct. 501, 70 L.Ed.2d 377 (1981) (immunity based on "good faith action under apparently valid authority is an affirmative defense which [defendant] must plead and prove") *and Chavis v. Rowe*, 643 F.2d 1281, 1288 (7th Cir.), *cert. denied*, 454 U.S. 907, 102 S.Ct. 415, 70 L.Ed.2d 225 (1981) (defendants must plead and prove good faith before they are entitled to qualified immunity in a § 1983 action) *with Johnson v. Miller*, 680 F.2d 39, 42 (7th Cir. 1982) (absent allegation of knowing or intentional constitutional deprivation, plaintiff's complaint fails to state cause of action under 42 U.S.C. § 1983).[4]

---

defendants with regard to the free exercise of religious rights or with regard to the correspondence rights of the plaintiff. And I rule those out of the case.

Tr. 377–78.

4. *See also Thomas v. Pate*, 516 F.2d 889, 891 n.2 (7th Cir.), *cert. denied*, 423 U.S. 877, 96 S.Ct. 149, 46 L.Ed.2d 110 (1975) (suggesting

that, to recover damages under § 1983, a plaintiff must prove that a public official has acted " 'with the malicious intention to cause a deprivation of constitutional rights or other injury to the [plaintiff]' or 'with such disregard of the [plaintiff's] clearly established constitutional

Although most other circuits seem to indicate that these elements are part of a qualified immunity defense, and that the burden of proof is therefore on the defendant,[5] the Supreme Court has not resolved the question of which party bears the burden of proof, in contrast to the burden of pleading, with respect to a qualified immunity defense. *See Harlow v. Fitzgerald,* —— U.S. ——, —— n.24, 102 S.Ct. 2727, 2737 n.24, 73 L.Ed.2d 396 (1982); *Gomez v. Toledo,* 449 U.S. 635, 642, 100 S.Ct. 1920, 1924, 64 L.Ed.2d 572 (1980) (Rehnquist, J. concurring). For purposes of this appeal, we will assume, without deciding, that all of these elements are part of the plaintiff's prima facie case. Indeed, the plaintiff at trial, in addressing these elements, indicated acceptance of the burden of proof.

We agree with the district court that defendants are entitled to judgment as a matter of law on plaintiff's general correspondence and general reading material claims. In *Procunier v. Martinez,* 416 U.S. 396, 406–07, 94 S.Ct. 1800, 1808, 40 L.Ed.2d 224 (1974), the Supreme Court noted that during the years 1969–1972 (the time frame involved in the instant suit) federal courts used a wide variety of inconsistent standards for judging the permissibility of restrictions on prisoner mail. Some courts maintained a hands-off posture, *e.g., Krupnick v. Crouse,* 366 F.2d 851 (10th Cir. 1966); *Lee v. Tahash,* 352 F.2d 970 (8th Cir. 1965); *McCloskey v. Maryland,* 337 F.2d 72 (4th Cir. 1964); while others required demonstration of a "substantial and controlling interest," *Jackson v. Godwin,* 400 F.2d 529, 541 (5th Cir. 1968); a "clear and present danger," *Wilkerson v. Skinner,* 462 F.2d 670, 672–73 (2d Cir. 1972); or a necessary

relation "to the advancement of some justifiable purpose of imprisonment," *Carothers v. Follette,* 314 F.Supp. 1014, 1024 (S.D.N.Y. 1970), to justify prison mail censorship. Thus, in *Procunier v. Navarette,* 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1977), the Supreme Court concluded that prior to 1973 there was no adequate basis for claiming a "clearly established constitutional right" protecting the type of general correspondence involved in that case. 434 U.S. at 564, 98 S.Ct. at 861. It was not until 1974, that the Court, in *Procunier v. Martinez,* 416 U.S. 396, 407, 413, 94 S.Ct. 1800, 1808, 1811, 40 L.Ed.2d 224 announced the formulation of such prisoner mail censorship standards.

■ Standards regarding the censorship of general prison reading material were similarly unsettled during the time in question. *Compare, e.g., Sykes v. Kreiger,* 451 F.Supp. 421, 430 (N.D.Ohio 1975) (prison authorities may deny an inmate the right to receive publications having a deleterious effect on institutional control, but must give inmate written notification and reasons for such a denial) *and Seale v. Manson,* 326 F.Supp. 1375, 1382 (D.Conn.1971) (prison authorities must show compelling state interest or substantial interference with prison order to justify curtailment of prisoner's right to read what he pleases) *with McKinney v. DeBord,* 324 F.Supp. 928 (E.D.Cal. 1970), *aff'd in part, rev'd in part,* 507 F.2d 501 (9th Cir. 1974) (constitutionally permissible to limit the number of books prisoners may keep in their cells and to prohibit prisoners from receiving or purchasing books from other inmates) *and U.S. ex rel. Oakes v. Taylor,* 274 F.Supp. 42 (E.D.Pa.1967) (prison regulation barring inmates from re-

---

rights that the action cannot reasonably be characterized as being in good faith' ") (quoting *Wood v. Strickland,* 420 U.S. 308, 322, 95 S.Ct. 992, 1000, 43 L.Ed.2d 214 (1975)).

5. *See, e.g., Barrett v. Thomas,* 649 F.2d 1193 (5th Cir. 1981), *cert. denied,* —— U.S. ——, 102 S.Ct. 1969, 72 L.Ed.2d 440 and —— U.S. ——, 102 S.Ct. 1992, 72 L.Ed.2d 455 (1982); *Taylor v. Mayone,* 626 F.2d 247 (2d Cir. 1980); *Jacobson v. Rose,* 592 F.2d 515 (9th Cir. 1978), *cert. denied,* 442 U.S. 930, 99 S.Ct. 2861, 61 L.Ed.2d 298 (1979); *Landrum v. Moats,* 576 F.2d 1320

(8th Cir.), *cert. denied,* 439 U.S. 912, 99 S.Ct. 282, 58 L.Ed.2d 258 (1978); *Skehan v. Board of Trustees,* 538 F.2d 53 (3d Cir. 1976), *cert. denied,* 429 U.S. 979, 97 S.Ct. 490, 50 L.Ed.2d 588 (1977); *Zweibon v. Mitchell,* 516 F.2d 594 (D.C. Cir.1975), *cert. denied,* 425 U.S. 944, 96 S.Ct. 1684, 48 L.Ed.2d 187 (1976). *But cf. Whitley v. Seibel,* 613 F.2d 682 (7th Cir. 1980) (burden of proof on plaintiff arrestee to show that arresting officers lacked reasonable good faith belief of probable cause to arrest plaintiff).

ceiving out of state newspaper is reasonable restriction relating to prison order). Thus, we find that, because there were no clearly established constitutional standards governing the permissibility of restrictions on prisoners' general correspondence and general reading materials during the time period involved in this litigation, the district court was correct in directing a verdict in favor of all defendants on these aspects of plaintiff's first amendment claim.

██ This uncertainty in the law, however, did not apply to prisoners' rights to legal literature or to correspondence regarding legal matters. In *Procunier v. Navarette*, 434 U.S. at 565 n.12, 98 S.Ct. at 861 n.12, the Supreme Court specifically noted that in discussing the censorship of prisoner mail, it was not addressing any claims pertaining to prisoners' access to the courts or to legal materials. Indeed, as early as 1969, the Supreme Court held that prison officials could not constitutionally obstruct prisoners' access to the courts for the purpose of presenting their legal claims and complaints. *Johnson v. Avery*, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969). Similarly, this circuit recognized the importance of permitting unfettered communication between inmates and the courts as early as 1959. *Spires v. Dowd*, 271 F.2d 659 (7th Cir. 1959) (warden cannot prevent inmate from mailing documents to clerk of state court). *See also Spires v. Bottorff*, 317 F.2d 273 (7th Cir. 1963) (denial of right to mail documents to court clerk states a cause of action); *Sigafus v. Brown*, 416 F.2d 105 (7th Cir. 1969) (confiscation of legal papers is unconstitutional and prisoner access to courts is guaranteed); *Adams v. Carlson*, 488 F.2d 619 (7th Cir. 1973) (prisoners must have reasonable access to legal materials, and such materials should not be confiscated without a showing that confiscation is necessary to the achievement of a justifiable purpose). Therefore, we cannot conclude, as a matter of law, that no clearly established constitutional right to legal literature and access to courts existed during the years 1969 to 1973, and we thus hold that the district court erred in directing a verdict in favor of the defendants on this aspect of the plaintiff's first amendment claim.[6]

██ We further hold that a directed verdict was improper on plaintiff's claim of denial of religious freedom. A prisoner's right to the free exercise of his religion, limited only by a prison's legitimate security interests, was clearly established during the time Crowder was confined. *See Cruz v. Beto*, 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972); *Cooper v. Pate*, 378 U.S. 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964), *on remand*, 382 F.2d 518, 521–23 (7th Cir. 1967) (prisoner has right to receive religious material, to correspond with and receive visits from ministers and to attend organized religious services unless prison authorities show that such activities constitute a clear and present danger to prison security). Further, we believe the district court erred in stating that Crowder had failed to present any evidence supporting his free exercise claim. Crowder testified at trial that defendants Lash, Moore and Devero denied his requests to correspond with ministers and members of religious organizations because such correspondence was "not considered advisable," that they discouraged chaplains from visiting the D. O. Seclusion Unit, confiscated and did not return Crowder's Bible and denied Crowder the right to visit the prison chapel during his confinement in D. O. seclusion. Considering, as we must, all the evidence in the light most favorable to the plaintiff, and disregarding any conflicting testimony, we conclude that, although the issue is a close one, plaintiff presented sufficient evidence to submit his free exercise claim to the jury. *See Hampton v. Hanrahan*, 600 F.2d at 607–08.

---

**6.** We recognize that a prisoner's right of access to courts has both first and fourteenth amendment aspects. We consider the issue as part of plaintiff's first amendment claim here because we reach it through his right to correspond with his attorney and with the courts, as well as through his right of reasonable access to legal materials.

Considering the evidence in the light most favorable to the plaintiff, we also believe that an impartial jury could have found a violation of Crowder's fourteenth amendment rights. In *Adams v. Pate*, 445 F.2d 105 (7th Cir. 1971), this court held that the standards of due process require that prior to the imposition of disciplinary segregation, a prisoner be confronted with the accusation against him and be "afforded a reasonable opportunity to deny the accusation or explain his actions." 445 F.2d at 108.[7] The record in this case strongly indicates that the defendants did not comply with these standards. Crowder testified at trial that he would typically be summoned to a "disciplinary hearing" at which a committee would read the charges against him, find him guilty and sentence him to continued seclusion without allowing him to explain or deny the charges against him. Tr. 35, 36, 39, 57, 362–64. Indeed, Crowder testified that at one point he was found guilty and sentenced to a strip cell in D. O. seclusion without even being informed of the accusation against him. Tr. 538–39. In their brief, the defendants make little attempt to refute plaintiff's testimony on this issue and admit that on one occasion a "disciplinary hearing" may have been held in the plaintiff's absence. Defendants assert, however, that this procedure, even if violative of due process, was "under the totality of the circumstances herein involved . . . harmless error." Defendant's Br. at 12. For purposes of evaluating the propriety of a directed verdict, we cannot accept this assessment.

## III

In addition to directing a verdict in favor of all defendants on Crowder's first and fourteenth amendment claims, the district court also directed a verdict in favor of defendants Heyne, Moore, and Devero on all issues on grounds that they lacked personal responsibility for the alleged constitutional deprivations. We agree with the district court regarding Heyne on all issues, but disagree with the district court's directed verdict in favor of defendants Moore and Devero on plaintiff's eighth and fourteenth amendment claims, as well as on the access to courts and religious freedom aspects of plaintiff's first amendment claim.

To recover damages under 42 U.S.C. § 1983, a plaintiff must establish defendants' personal responsibility for the claimed deprivation of a constitutional right. *Duncan v. Duckworth*, 644 F.2d 653, 655 (7th Cir. 1981). However, a defendant's direct participation in the deprivation is not required. An official satisfies the personal responsibility requirement of section 1983 if she acts or fails to act with a deliberate or reckless disregard of plaintiff's constitutional rights, or if the conduct causing the constitutional deprivation occurs at her direction or with her knowledge and consent. *Beard v. Mitchell*, 604 F.2d 485, 498–99 (7th Cir. 1979); *Adams v. Pate*, 445 F.2d 105, 107 (7th Cir. 1971). *See also Wood v. Worachek*, 618 F.2d 1225, 1233 (7th Cir. 1980); *Stringer v. Rowe*, 616 F.2d 993, 1000–01 (7th Cir. 1980); *Spence v. Staras*, 507 F.2d 554, 557 (7th Cir. 1974).

In asserting defendant Heyne's personal responsibility for damages, Crowder relies primarily on Heyne's familiarity (through communications with his subordinates) with the conditions in D. O. seclusion, and on the fact that Crowder informed

---

7. In *United States ex rel. Miller v. Twomey*, 479 F.2d 701 (7th Cir. 1973), *cert. denied*, 414 U.S. 1146, 94 S.Ct. 900, 39 L.Ed.2d 102 (1974), and its progeny, this Court further delineated the procedural due process standards governing the placement of prisoners in disciplinary segregation. Thus, absent emergency circumstances, a prisoner subject to disciplinary confinement is entitled to notice, an impartial hearing, an opportunity to call witnesses unless to do so would jeopardize institutional security and a decision based on substantial evidence which sets forth the reason for the decision and the evidence relied upon. *Hayes v. Walker*, 555 F.2d 625 (7th Cir.), *cert. denied*, 434 U.S. 959, 98 S.Ct. 491, 54 L.Ed.2d 320 (1977); *Aikens v. Lash*, 547 F.2d 372 (7th Cir. 1976); *LaBatt v. Twomey*, 513 F.2d 641 (7th Cir. 1975). *See generally Wolff v. McDonnel*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).

We do not apply these standards to Crowder's claim for damages, however, because they were not clearly established at the time Crowder's "disciplinary hearings" took place.

Heyne both personally and by letter "of the conditions under which [Crowder] had to live and the deprivations he encountered." Appellant's Br. at 16; *see* Tr. 86–91. The logical import of this theory, however, would be to hold any well informed Commissioner of Corrections personally liable for damages flowing from *any* constitutional violation occurring at *any* jail within that Commissioner's jurisdiction. We believe that such a broad theory of liability is inconsistent with the personal responsibility requirement for assessing damages against public officials in a section 1983 action. *See McBride v. Soos,* 679 F.2d 1223 (7th Cir. 1982); *Dommer v. Crawford,* 653 F.2d 289 (7th Cir. 1981).

■ Crowder has not presented evidence indicating that Heyne participated personally in any of the deprivations which form the basis for Crowder's damage claims, nor does Crowder's testimony indicate that any of the challenged actions occurred at Heyne's direction or with his express consent. We therefore uphold the district court's determination that defendant Heyne was entitled to a directed verdict on all aspects of plaintiff's § 1983 claims.

■ We believe, however, that the district court erred in directing a verdict in favor of defendants Moore and Devero on Crowder's fourteenth amendment allegations and on the legal and religious freedom aspects of his first amendment claim. The evidence presented by Crowder indicated that both Moore and Devero sat as members of the disciplinary committee and, thus, participated directly in the "disciplinary hearings" by which Crowder was repeatedly sentenced to confinement in the D. O. seclusion unit. In addition, Crowder testified that Moore and Devero were directly responsible for denying his requests for legal assistance and legal materials. *See* Tr. 62, 65, 66, 74, 76, 119; Pl. Ex's. 14, 19. Moreover, because Moore and Devero were personally accountable for reviewing the status of inmates held in D. O. seclusion, they could properly be held liable for an eighth amendment violation if, at any time, Crowder's continued confinement in D. O.

seclusion became unlawfully disproportionate to the seriousness of his prison infractions. *See, e.g., Mary & Crystal v. Ramsden,* 635 F.2d 590, 596 (7th Cir. 1980); *Chapman v. Pickett,* 586 F.2d 22, 27–28 (7th Cir. 1978). We thus hold that it was error for the district court to direct a verdict in favor of defendants Moore and Devero as to these issues on grounds of lack of personal responsibility.

## IV

■ Defendants argue on appeal that, regardless of the propriety of the district court's stated reasons for directing a verdict in their favor, the verdict should nonetheless be upheld on qualified immunity grounds. As both the Supreme Court and this circuit have noted, the concept of immunity, absolute or qualified, for public officials acting within the scope of their official responsibilities is based upon the need to ensure principled and conscientious governmental decision-making. Such decision-making, it is noted, can only be achieved by affording government officials some measure of protection from personal liability arising out of the exercise of their discretion and the performance of their required duties. *Knell v. Bensinger,* 522 F.2d 720, 724 (7th Cir. 1975); *see Nixon v. Fitzgerald,* —— U.S. ——, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982); *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). The notion of qualified immunity thus represents "an attempt to balance competing values: not only the importance of a damages remedy to protect the rights of citizens, . . . but also 'the need to protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority.' " *Harlow v. Fitzgerald,* —— U.S. ——, ——, 102 S.Ct. 2727, 2733, 73 L.Ed.2d 396 (1982) *quoting Butz v. Economou,* 438 U.S. 478, 506, 98 S.Ct. 2894, 2910, 57 L.Ed.2d 895 (1978). The type of qualified immunity available to a particular official depends upon the scope of his discretion and responsibilities of his office, and upon all the circumstances as they reasonably appeared

to the official at the time the challenged conduct took place. *Scheuer v. Rhodes,* 416 U.S. 232, 247–48, 94 S.Ct. 1683, 1691–92, 40 L.Ed.2d 90 (1974).

Until recently, the established Supreme Court standards for qualified or "good faith" immunity included both a subjective and an objective component: a sincere belief in the correctness of one's action, on the one hand, and an imputation of reasonable knowledge of, and respect for, basic constitutional rights affected by that action, on the other. *See, e.g., Wood v. Strickland,* 420 U.S. 308, 321, 95 S.Ct. 992, 1000, 43 L.Ed.2d 214 (1975); *Scheuer v. Rhodes,* 416 U.S. 232, 247–48, 94 S.Ct. 1683, 169–92, 40 L.Ed.2d 90 (1974). In *Procunier v. Navarette,* 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978), the Court applied this standard to the conduct of prison officials. In its most recent decision on the subject, however, the Supreme Court noted that many courts have regarded the subjective element of the good faith defense as creating a question of fact inherently requiring resolution by a jury, thus allowing bare allegations of malice to preclude summary judgment, and resulting in burdensome social costs, expensive litigation and the deterrence of able citizens from accepting public office. *Harlow v. Fitzgerald,* —— U.S. ——, —— ——, 102 S.Ct. 2727, 2737–38, 73 L.Ed.2d 396 (1980).

The Supreme Court, in *Harlow,* thus formulated a revised qualified immunity standard that does not include a subjective component; the Court held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* —— U.S. at ——, 102 S.Ct. at 2738. If the constitutional right in question was clearly established at the time the challenged conduct took place, the qualified immunity defense ordinarily should fail, since a reasonably competent public official is expected to know the law governing his conduct. *Id.* Nevertheless, extraordinary circumstances may exist under which an official may be able to prove that he neither knew or should have known of the relevant legal standard. Again, however, the Supreme Court emphasized that this aspect of the defense would turn primarily on objective rather than subjective factors. *Id.*

Because Crowder's constitutional rights to minimum due process in disciplinary proceedings, access to the courts and legal materials and freedom of religious exercise were clearly established in the prison context at the time the alleged deprivations occurred, the directed verdict as to these issues cannot be upheld on qualified immunity grounds. As experienced officials, the defendants could reasonably have been expected to know of the constitutional standards governing their conduct. In addition, the evidence presented at trial, viewed in the light most favorable to the plaintiff, is sufficient to create a jury question as to whether the defendants should reasonably have known that their conduct would violate these clearly established constitutional norms. Of course, defendants may still prevail on their qualified immunity defense with respect to these issues, but only if they can demonstrate the existence of the extraordinary circumstances required by *Harlow v. Fitzgerald.*

In sum, we affirm the directed verdict on all issues with respect to defendant Heyne, and on plaintiff's general first amendment claims with respect to all defendants. We reverse the directed verdict in favor of defendants Moore, Devero and Lash on the fourteenth amendment due process issues, and on the access to courts and religious freedom aspects of plaintiff's first amendment claim.

V

A. RES JUDICATA

In their appellate brief, defendants suggest that Crowder should have been barred entirely, by res judicata principles, from bringing this § 1983 action, because of his participation in *Aikens v. Lash,* 371 F.Supp. 482 (N.D.Ind.1974), *aff'd,* 514 F.2d

55 (7th Cir. 1975), *vacated on other grounds,* 425 U.S. 947, 96 S.Ct. 1721, 48 L.Ed.2d 191 (1976). *Aikens v. Lash* was a class action, brought against these same defendants by Indiana State Prison inmates for equitable relief only, which determined, among other things, that the D. O. Seclusion Unit in which Crowder was held from 1969 to 1973 violated the eighth amendment's ban on cruel and unusual punishment. 371 F.Supp. at 498.[8] Defendants, however, did not properly raise their res judicata defense in the lower court. As an affirmative defense under Fed.R.Civ.P. 8(c), res judicata must be properly raised or it is waived. *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 607–08 n.19, 95 S.Ct. 1200, 1210 n.19, 43 L.Ed.2d 482 (1975); *Alsager v. District Court of Polk County,* 518 F.2d 1160, 1165–66 (8th Cir. 1975).

■ Defendants' original Motion to Dismiss mentioned res judicata with respect to Crowder's due process claim only; it did not address the eighth amendment issue, and is thus irrelevant to the present inquiry. Defendants' Supplemental Motion to Dismiss and Answer raised the defense of res judicata but only with respect to the limited issue of defendants' good faith. Defendants argued, erroneously, that plaintiff was precluded from an award of damages because the issue of defendants' good faith had been decided adversely to him in *Aikens.* But the district court in *Aikens* did not address the issue of defendants' good faith, since that issue was immaterial to the declaratory and injunctive relief requested by the plaintiff class. Therefore, because defendants here did not raise a broad or general res judicata defense in the district court, that issue is not before us on appeal. *See Ohio Casualty Insurance Co. v. Rynearson,* 507 F.2d 573, 582 (7th Cir. 1974) ("The principle that new issues or new bases of liability may not be raised for the first time on appeal, is too well known to require citation.").

■ Even if res judicata were properly before us, however, we would reject defendant's broad argument on its merits. At least one circuit has held that before a class member may be barred from pursuing an individual claim for damages, he must have been notified that he was required to adjudicate his damage claims as part of a prior class action suit. *Penson v. Terminal Transport Co.,* 634 F.2d 989, 995 (5th Cir. 1981); *Johnson v. General Motors Corp.,* 598 F.2d 432, 437 (5th Cir. 1979); *Bogard v. Cook,* 586 F.2d 399, 408 (5th Cir. 1978), *cert. denied,* 444 U.S. 883, 100 S.Ct. 173, 62 L.Ed.2d 113 (1979). *Aikens v. Lash,* however, was filed as a suit for declaratory and injunctive relief only. We agree with the fifth circuit that it would be "a harsh and improper application of res judicata to hold, on the basis of the notice sent out in [a previous class action suit] that prisoners forfeited their rights to personal redress for lack of knowledge that federal law ... required that injunctive and monetary relief be sought in one action." *Bogard v. Cook,* 586 F.2d at 408–09.

Further, Crowder was not one of the original plaintiffs in *Aikens* ; he was added by way of an amended complaint nearly six weeks after the class action was filed. It seems unlikely that Crowder would have been allowed to join the pending class litigation if he had insisted on including his individual damage claims. Among other problems, claims for individual damage relief would have required separate mini-trials for each prisoner. *Bogard v. Cook,* 586 F.2d at 409. Moreover, because damage relief could only have been sought against officials in their individual capacity, the problem of qualified immunity would have been injected into the suit. *Id.* Given the lack of common questions of fact as to individual damage claims and the potential unmanageability of the class action had such claims been included, we are doubtful that the district court would have allowed Crowder to append his individual damage claims to the ongoing class litigation. *See*

---

**8.** The district court's finding in *Aikens* of cruel and unusual punishment was not appealed by the state.

*Bogard v. Cook,* 586 F.2d at 409; *cf. Heckard v. Pate,* 52 F.R.D. 224, 229 (N.D.Ill.1971) (denying class certification in prisoner § 1983 suit because, *inter alia,* inmate sought both injunctive and monetary relief and court foresaw "enormous difficulties" in managing the suit as a class action). And we find it unacceptable, in this context, to require an inmate to elect between joining an ongoing class suit and thereby forfeiting his right to seek individual damages, on the one hand, and removing himself from the class (and hence risking exclusion from any equitable relief granted) in order to preserve the possibility of bringing a subsequent damage action, on the other.

Indeed, several circuits have held that where a prisoner seeks damages for allegedly unconstitutional conditions of confinement he is not precluded by an earlier class action in which only declaratory and injunctive relief were sought. *Cotton v. Hutto,* 577 F.2d 453, 454 (8th Cir. 1978); *Jones-Bey v. Caso,* 535 F.2d 1360, 1361–62 (2d Cir. 1976). In addition, this court recently noted, in a closely related context, that another prisoner, who was also a class member in *Aikens v. Lash,* was not barred by res judicata from litigating individual first amendment claims in a subsequent § 1983 action, because "the issue of the denial of [that prisoner's] personal correspondence rights had not been presented in *Aikens.*" *Owen v. Lash,* 682 F.2d 648, 650 (7th Cir. 1982), slip op. at 3 (Stewart, Justice, retired). In light of these authorities, we cannot conclude that Crowder should be barred from pursuing this damage action on the basis of his limited participation in *Aikens v. Lash.*[9]

B. COLLATERAL ESTOPPEL

Plaintiff Crowder for his part argues that the district court erred in refusing to apply collateral estoppel to preclude defendants from relitigating the constitutionality of the conditions in D. O. seclusion during the time Crowder was confined—an issue decided adversely to these defendants in *Aikens v. Lash.*[10] Under the doctrine of collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits, based on a different cause of action, involving a party to the prior litigation. *Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979).

The district court considered the effect of collateral estoppel, but refused to apply the doctrine in this case because of its interpretation of the Supreme Court's decision in *Beacon Theaters, Inc. v. Westover,* 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959).[11]

---

**9.** Moreover, Crowder's damages had not been fully incurred either at the time he joined *Aikens* in August of 1972, or at the time the *Aikens* trial concluded in October of 1973. Crowder was not released from D. O. seclusion until November of 1973. Such a continuation of damages militates strongly against application of a res judicata bar. *See Bogard v. Cook,* 586 F.2d 399, 408 (5th Cir. 1978), *cert. denied,* 444 U.S. 883, 100 S.Ct. 173, 62 L.Ed.2d 113 (1979); *cf. Lawlor v. National Screen Service Corp.,* 349 U.S. 322, 328, 75 S.Ct. 865, 868, 99 L.Ed. 1122 (1955).

**10.** We note that the defendants originally argued that collateral estoppel should apply to the good faith issue allegedly determined in *Aikens. See* Tr. 18–19. After it was pointed out that *Aikens* did not address the issue of good faith, defendants did an about-face, taking the position that collateral estoppel should not apply to Crowder's eighth amendment claim at all.

**11.** Plaintiff in *Beacon Theaters,* in anticipation of an antitrust suit for treble damages, had filed a claim for declaratory and injunctive relief. The defendant named in that action then filed a counterclaim for damages, requesting a jury trial. The district court ruled that the factual issues common to both claims would be tried to the court before a jury determination of the validity of defendant's counterclaim. The Supreme Court reversed, holding that, because a judgment in the former equitable proceeding might, through application of collateral estoppel, prevent a full jury trial on the counterclaim, the district court had abused its discretion in refusing to permit joinder of the equitable and legal causes of action. The Supreme Court noted, however, that where "joinder in one suit of legal and equitable causes would not in all respects protect the plaintiff seeking equitable relief from irreparable harm while affording a jury trial in the legal cause, the trial court will necessarily have to use its discretion in deciding whether the legal or equitable cause should be tried first." 359 U.S. at 510, 79 S.Ct. at 956.

The district court reasoned that because defendants, as an original matter, were entitled to a jury trial on plaintiff's § 1983 allegations, the non-jury verdict in *Aikens v. Lash* could not be used to collaterally estop them from presenting their eighth amendment arguments to the jury in a subsequent legal proceeding. The district court, however, failed to reinterpret *Beacon Theaters* in light of the Supreme Court's more recent decision in *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979).

In *Parklane Hosiery*, the Supreme Court held that a company which had a "full and fair" opportunity to litigate its claims in an injunctive proceeding initiated by the SEC was collaterally estopped from relitigating issues actually determined against it in that proceeding in a subsequent stockholder's class action for damages. The Supreme Court considered and rejected the company's argument that such an offensive use of collateral estoppel, based on a non-jury determination, violated its seventh amendment right to a jury trial. Citing both *Beacon Theaters* and *Katchen v. Landy*, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966) the Supreme Court in *Parklane Hosiery* squarely recognized that "an equitable determination can have collateral estoppel effect and that this estoppel does not violate the Seventh Amendment." 439 U.S. at 335, 99 S.Ct. at 653. As the second circuit decision in *Parklane* had noted, "[s]ince the seventh amendment preserves the right to jury trial only with respect to issues of fact, once those issues have been fully and fairly adjudicated in a prior proceeding, nothing remains for trial, either with or without a jury." *Shore v. Parklane Hosiery Co.*, 565 F.2d 815, 819 (2d Cir. 1977) *quoted in* 439 U.S. at 325, 99 S.Ct. at 648.[12] Thus, under *Parklane Hosiery*, a plaintiff in a subsequent legal proceeding may assert collateral estoppel based upon a prior equitable determination, provided that the defendant has had a "full and fair" opportunity to litigate its claims in the prior action. *Parklane Hosiery*, 439 U.S. at 328, 332–33, 99 S.Ct. at 652. *Accord Butler v. Stover Bros. Trucking Co.*, 546 F.2d 544 (7th Cir. 1977); *Samuel C. Ennis & Co. v. Woodmar Realty Co.*, 542 F.2d 45, 49 (7th Cir. 1976), *cert. denied*, 429 U.S. 1096, 97 S.Ct. 1112, 51 L.Ed.2d 543 (1977).

In order to determine when a party may appropriately be precluded from relitigating an issue decided adversely to it in an earlier proceeding, a court must examine whether the issue on which collateral estoppel is asserted is identical to that determined in the prior action; whether the controlling facts or legal principles have changed significantly since the prior judgment; and whether any special circumstances exist which would render preclusion inappropriate or unfair. *Montana v. United States*, 440 U.S. 147, 155, 99 S.Ct. 970, 974, 59 L.Ed.2d 210 (1979). *See also Hicks v. Quaker Oats Co.*, 662 F.2d 1158, 1166 (5th Cir. 1981); *Speaker Sortation Systems, Div. of A–T–O, Inc. v. United States Postal Service*, 568 F.2d 46, 49 (7th Cir. 1978). Special circumstances which would counsel against the application of offensive collateral estoppel include the stance of a "wait-and-see" plaintiff who could easily have participated in the previous action but, instead, held back to await the outcome of that action;[13] a lack of incentive on the part of the defendant to fully and vigorously litigate the earlier action; an inconsistency between

12. The second circuit, in *Parklane Hosiery* also stated:

If anything, *Beacon Theaters* implicitly confirms the long-accepted principle that a non-jury adjudication of issues asserted in an equitable claim will collaterally estop a later jury trial of the same issues presented by the same party in a legal claim. Had it not been for that basic assumption the Supreme Court would not have been concerned about the order in which the legal and equitable claims were to be tried, since the defendant would then have been guaranteed a jury trial of the counterclaim regardless of the outcome of the equitable claim.
565 F.2d at 820–21.

13. Mutuality of parties is no longer a prerequisite for the application of collateral estoppel. *Parklane Hosiery*, 439 U.S. at 327–28, 99 S.Ct. at 649–50. However, we note that in the case before us, mutuality of parties does in fact exist.

the judgment relied upon as a basis for the estoppel and any prior judgments in favor of the defendant; and the existence, in the second proceeding, of procedural opportunities unavailable in the first action, that would be likely to cause a different result. *Parklane Hosiery*, 439 U.S. at 331–32, 99 S.Ct. at 651–52. The Supreme Court, in *Parklane Hosiery*, also stated that "the preferable approach for dealing with these problems in the federal courts is not to preclude the use of offensive collateral estoppel, but to grant trial courts broad discretion to determine when it should be applied." 439 U.S. at 331, 99 S.Ct. at 651 (footnote omitted).

■ On the record before us, we can see no reason why plaintiff should be prevented from using collateral estoppel in this case to bar defendants from relitigating the constitutionality of the conditions in the D. O. Seclusion Unit at the time Crowder was confined. First, Crowder was not a "wait-and-see" plaintiff; as a member of the plaintiff class in *Aikens v. Lash*, he stood equally bound with the defendants by whatever judgment the district court reached in that case. Moreover, Crowder did not "hold back" to await the outcome in *Aikens*; rather he filed his *pro se* complaint for damages nearly three months before *Aikens* was decided. Second, defendants in *Aikens* appear to have every incentive to fully and vigorously litigate their eighth amendment liability, in light of the extensive changes and heavy costs with which they would be saddled if the conditions in D. O. seclusion were found to constitute cruel and unusual punishment. Finally, defendants in *Aikens* had a full range of procedural opportunities available to them, and were not forced to litigate in an inconvenient or unfriendly forum.[14]

■ Contrary to defendant's apprehensions, application of collateral estoppel to bar relitigation of issues determined in *Aikens v. Lash* will not automatically establish defendant's liability for damages here. Even if the *conditions* under which Crowder was confined are held to constitute cruel and unusual punishment as a matter of law, issues of personal responsibility and good faith on the part of these defendants remain to be litigated.[15] *See Bogard v. Cook*, 586 F.2d 399, 409 (5th Cir. 1978), *cert. denied*, 444 U.S. 883, 100 S.Ct. 173, 62 L.Ed.2d 113 (1979). Because the district court, in failing to apply the teachings of the then recently decided *Parklane* case, had no opportunity to evaluate, under proper standards, the appropriateness of applying collateral estoppel to the facts of this case, we leave it to that court on remand to determine, in the first instance, whether and to what extent collateral estoppel should preclude relitigation of issues relevant to Crowder's eighth amendment claim.

■ In light of our reversal of the directed verdict on plaintiff's due process, freedom of religion and access to courts allegations, and the fact that these allegations may properly be considered by the jury as part of the "totality of circumstances" relevant to plaintiff's eighth amendment claim, *see, e.g., Hutto v. Finney*, 437 U.S. 678, 687, 98 S.Ct. 2565, 2571, 57 L.Ed.2d 522 (1978); *Jones v. Diamond*, 636 F.2d 1364, 1368 (5th Cir.), *cert. dism'd*, 453 U.S. 950, 102 S.Ct. 27, 69 L.Ed.2d 1033 (1981), we

---

14. The third special circumstance mentioned in *Parklane*—an inconsistency between the judgment relied upon and any prior decisions in favor of the defendant—is not applicable in the instant context.

15. We note that in light of the Supreme Court's decision in *Harlow v. Fitzgerald*, —— U.S. ——, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), defendants may be entitled to qualified immunity on Crowder's eighth amendment claims as a matter of law. Defendants are entitled to prevail on qualified immunity grounds if they can show that Crowder's eighth amendment right to be free of the "cruel and unusual" conditions in D. O. seclusion was not clearly established during the time he was incarcerated. Because the issue of qualified immunity on Crowder's eighth amendment claim has been neither briefed nor argued, we do not reach it on this appeal. We note, however, that any consideration of defendants' qualified immunity on this issue must take into account the disproportionality as well as the conditions-of-confinement aspects of Crowder's eighth amendment allegations. *See, e.g., Chapman v. Pickett*, 586 F.2d 22, 27–28 (7th Cir. 1978).

believe that the question of Lash's eighth amendment liability must be reconsidered even if the district court determines that application of collateral estoppel is inappropriate in this case.

### VI

Because we view the directed verdict and collateral estoppel issues as dispositive of this appeal, we need not address plaintiff's remaining contentions relating to jury instructions and the exclusion of evidence. For the reasons discussed above, we affirm in part, reverse in part and remand this case for further proceedings consistent with this opinion. Circuit Rule 18 shall apply.