**Meredith COLEMAN, Plaintiff,**

v.

**Nyal FRANTZ, Sheriff of Wells County, Indiana, Defendant.**

**Civ. No. F 83–227.**

United States District Court,
N.D. Indiana,
Fort Wayne Division.

Jan. 12, 1984.

---

Joseph S. Northrop, Huntington, Ind., for plaintiff.

Alan VerPlanck, Barrett, Barrett & McNagny, Fort Wayne, Ind., for defendant.

## ORDER

LEE, District Judge.

This matter is before the court for review and resolution of defendant's Motion for Summary Judgment filed November 7, 1983. Plaintiff filed a response to said motion on December 22, 1983; the court will consider plaintiff's response in addressing and resolving defendant's motion. Having examined defendant's motion and plaintiff's response, the court will grant defendant's motion for summary judgment.

### Discussion

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may only be granted if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Thus, summary judgment serves as a vehicle with which the court "can determine whether further exploration of the fact is necessary." *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir.1975).

In making this determination, the court must keep in mind that the entry of summary judgment terminates the litigation, or an aspect thereof, and must draw all inferences from the established or asserted facts in favor of the non-moving party. *Peoples Outfitting Co. v. General Electric Credit Corp.*, 549 F.2d 42 (7th Cir.1977). A party may not rest on the mere allegations of his pleadings or the bare contentions that an issue of fact exists. *Posey v. Skyline Corp.*, 702 F.2d 102, 105 (7th Cir.1983). *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). *See generally* C. Wright, *Law of Federal Courts*, § 99 (4th ed. 1983); 6 *Moore's Federal Practice*, § 56.15 (2d ed. 1983).

Thus, the moving party must demonstrate the absence of a genuine issue of material fact. The court views all evidence submitted in favor of the non-moving party. Even if there are some disputed facts, where the undisputed facts are the material facts involved and those facts show one party is entitled to judgment as a matter of law, summary judgment is appropriate. *Egger v. Phillips*, 710 F.2d 292, 296–97 (7th Cir.1983); *Collins v. American Optometric Ass'n*, 693 F.2d 636, 639 (7th Cir.1982). Further, if the court resolves all factual disputes in favor of the non-moving party and still finds summary judgment in favor of the moving party is correct as a matter of law, then the moving party is entitled to summary judgment in his favor. *Egger*, 710 F.2d at 297. *See also Bishop v. Wood*, 426 U.S. 341, 348, 348 n. 11, 96 S.Ct. 2074, 2079, 2079 n. 11, 48 L.Ed.2d 684 (1976).

The facts in this matter are virtually undisputed and are as follows. Defendant is the Sheriff of Wells County, Indiana and was acting in his official capacity during the events in question. Plaintiff is a resident of Wells County. The Wells Circuit Court issued a bench warrant for plaintiff's arrest on June 23, 1981. The bench warrant was issued after an affidavit of probable cause supporting the proposed warrant was submitted and examined by the Wells Circuit Court. The warrant instructed the Sheriff of Wells County to arrest Meredith Coleman on a charge of receiving stolen property, I.C. 35–43–4–2(b). The warrant also ordered the Sheriff of Wells County to return the bench warrant. Bond or bail was set for plaintiff in the amount of $10,000.00.

Plaintiff turned himself in at the Wells County jail on June 30, 1981. At that time, defendant read the bench warrant to plaintiff and plaintiff was informed of the amount of his bail. Defendant returned service of the warrant to the Wells Circuit Court on July 1, 1981. Plaintiff was held in defendant's custody, pursuant to the bench arrest warrant, until July 18, 1981, when he was released on his own recognizance. The prosecutor's office ordered defendant to release plaintiff. The actual O.R. bond was not filed as of record until July 20, 1981. During this period of detention, plaintiff repeatedly asked defendant when he was going to be taken to court. Plaintiff also protested his innocence. Defendant, when so asked, would check with the prosecuting attorney's office and never received a reply as to when plaintiff's next court appearance was to be. Defendant believed and it was a fact in June-July 1981 that it was the responsibility of the prosecuting attorney's office to secure a court date for plaintiff.

Also during this period of detention plaintiff had access to a telephone for his personal use, to visitors, and to the defendant and his staff. Plaintiff remembers speaking to an attorney during his first week of detention concerning his lack of court appearances. Plaintiff did not retain that attorney as counsel at that time. Plaintiff was not mistreated, abused, or denied necessary items while incarcerated.

Defendant notified the prosecuting attorney's office July 1, 1981 that he had the plaintiff in custody. Defendant did not take plaintiff before a judge for further proceedings during plaintiff's detention nor was he instructed or notified so to do. The criminal charge for which a bench warrant was issued and for which plaintiff was

arrested and detained was dismissed August 23, 1982.

Plaintiff brings this section 1983 claim for damages, alleging violations of the fourth, sixth and fourteenth amendments to the constitution. Plaintiff also brings pendent state claims, alleging false imprisonment, unnecessary rigor in arrest, intentional infliction of emotional distress, and negligence.[1]

■ Qualified good faith immunity is available to enforcement officers acting in their official capacities. *Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). *See also Procunier v. Navarette*, 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978); *Lenard v. Argento*, 699 F.2d 874 (7th Cir.1983); *Brubaker v. King*, 505 F.2d 534 (7th Cir.1974). The test for determining good faith of a person acting in his or her official capacity is an objective one. *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

■ Public officials acting in their official capacities "are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* 102 S.Ct. at 2738. Plaintiff claims violations of the fourth, sixth, and fourteenth amendments to the constitution. While *Harlow* does not address specifically whether this objective rule applies to state officials being sued under section 1983, it sets out a very broad hint that it would not make a distinction between suits against state officials and suits against federal officials in applying the objective test for determining good faith. *Id.*, 102 S.Ct. at 2738 n. 30. *See also Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978). The Seventh Circuit applies the *Harlow* test to suits involving state officials being sued for damages under section

1983. *Johnson v. Brelje*, 701 F.2d 1201 (7th Cir.1983); *Crowder v. Lash*, 687 F.2d 996 (7th Cir.1982).

■ If the arrest here is based on a valid warrant, then this case is governed by *Baker v. McCollan*, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). *Cf. Powe v. City of Chicago*, 664 F.2d 639 (7th Cir. 1981) ("[W]here an arrest is based on an invalid warrant, *Baker* does not preclude recovery under section 1983 for an unconstitutional deprivation of liberty.") *Baker* reaffirmed *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), which held that the fourth amendment as incorporated into the fourteenth amendment requires that states fairly and reliably determine probable cause as a condition of any significant pretrial restraint of liberty and that probable cause "must be made by a judicial officer either before or promptly after arrest." *Id.* at 125, 95 S.Ct. at 869, *quoted in Baker*, 443 U.S. at 143, 99 S.Ct. at 2694. Here, the situation is not the same as the situation in *Gerstein*. In *Gerstein*, the detainee had not had a judicial determination of probable cause. The *Gerstein* court held that a judicial determination of probable cause is a "prerequisite to extended restraint of liberty following arrest." *Gerstein*, 420 U.S. at 114, 95 S.Ct. at 863. A judicial officer of the Wells Circuit Court made a determination probable cause existed for Coleman's arrest prior to his arrest on a bench warrant. Plaintiff was lawfully committed to pretrial detention. *See Bell v. Wolfish*, 441 U.S. 520, 536, 99 S.Ct. 1861, 1872, 60 L.Ed.2d 447 (1979).

■ The Wells Circuit Court, in issuing the arrest warrant for plaintiff, had before it an affidavit purportedly supporting the proposed issuance of an arrest warrant. The affidavit was based on informa-

---

1. Plaintiff, in his response, attempts to raise a new claim; attacking the sufficiency of the probable cause affidavit supporting the bench warrant. Thus, he attacks the bench arrest warrant as constitutionally invalid. This is a wholly new claim not set forth in plaintiff's complaint. There has been no motion to amend the complaint. Therefore, the issue is not properly before the court. However, the court will consider the constitutional validity of the warrant. *See Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975); *Draper v. United States*, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959), and discussion *infra*, at pp. 31–32.

tion received from a non-professional informant. Further, the affidavit showed that independent corroboration by the Sheriff's Office had been made of several of the facts related by the informant. It is also clear from the affidavit that the non-professional informant spoke from personal knowledge and observation. *See United States v. Marino*, 682 F.2d 449 (3d Cir. 1982); *United States v. Ward*, 703 F.2d 1058 (8th Cir.1983); *United States v. Massey*, 687 F.2d 1348 (10th Cir.1982); *United States v. Stevens*, 543 F.Supp. 929 (N.D.Ill. 1982); *United States v. Martinez-Torres*, 556 F.Supp. 1236 (S.D.N.Y.1982). Thus, the Wells Circuit Court had before it an affidavit which demonstrated probable cause because it contained facts sufficient to demonstrate that the informant was credible or the information reliable and that the informant based her conclusions on adequate knowledge. *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). Probable cause may be established by hearsay evidence. *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). Plaintiff was detained pursuant to a legally sufficient and valid arrest warrant. Therefore, *Baker* controls the outcome of this suit.

In *Baker*, the Supreme Court held that a detention of three days, pursuant to a valid warrant, despite protests by the detainee of mistaken identity, did not rise to a section 1983 claim against the county sheriff. *Baker* also held that actual innocence of the charge involved is largely irrelevant to showing a constitutional violation occurred as the constitution does not guarantee only the guilty will be arrested.

The detainee in *Baker* was Linnie McCollan. His brother Leonard procured a duplicate of Linnie's driver's license and placed his (Leonard's) picture on Linnie's license. In October 1972, Leonard was arrested, booked, and released on bond on narcotics charges in Potter County, Texas under Linnie's name and driver's license. The bondsman successfully sought revocation of "Linnie McCollan's" bond and a warrant was issued. Next, the real Linnie was stopped in Dallas for a traffic violation on December 26, 1972 and upon a routine warrant check, detained on the narcotics charge filed in Potter County. Potter County deputies took custody of Linnie December 30, 1972 and detained him until January 2, 1973 when the sheriff's department realized the wrong man was being detained. Throughout his confinement, Linnie repeatedly protested his innocence because of mistaken identity.

McCollan's claim under section 1983 against the sheriff centered solely on "the intentional failure to investigate and determine that the wrong man was imprisoned." McCollan's brief *quoted in Baker*, 443 U.S. at 143, 99 S.Ct. at 2694. McCollan did not attack the validity of the warrant nor its sufficiency, but attacked his detention in the face of repeated protests of innocence due to mistaken identity. Plaintiff here does allege he protested his innocence, however the innocence was not based on mistaken identity. Plaintiff alleges a constitutional injury based on the eighteen day detention from the time of his arrest until the time of his release on his own recognizance.

Unlike *Baker*, the main allegation here is the defendant's alleged unreasonable delay in causing or his alleged failure to cause plaintiff to be brought before a court for further proceedings in the face of repeated requests and protests of innocence of the charge and not the allegation in *Baker* of the failure to check identity in the face of repeated protests of mistaken identity. But, both cases deal with waiting situations which were not allegedly acted upon quickly enough to save either pretrial detainee from being deprived of his liberty without due process of law.

*Baker* instructs:

Whatever claims this situation might give rise to under state tort law, we think it gives rise to no claim under the United States Constitution. Respondent was indeed deprived of his liberty for a period of days, but it was pursuant to a

warrant conforming, for purposes of our decision, to the requirements of the Fourth Amendment. Obviously, one in respondent's position could not be detained indefinitely in the face of repeated protests of innocence even though the warrant under which he was arrested and detained met the standards of the Fourth Amendment. For the Constitution likewise guarantees an accused the right to a speedy trial, and invocation of the speedy trial right need not await indictment or other formal charge; arrest pursuant to probable cause is itself sufficient. *United States v. Marion*, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). We may even assume, *arguendo*, that, depending on what procedures the State affords defendants following arrest and prior to actual trial, mere detention pursuant to a valid warrant but in the face of repeated protests of innocence will after the lapse of a certain amount of time deprive the accused of "liberty ... without due process of law." *Baker*, 443 U.S. at 144–45, 99 S.Ct. at 2694–95 (footnote omitted). *Baker* held that three days detention in the face of protests of innocence was not a deprivation of liberty without due process of law.

 A determination of whether plaintiff's detention without further judicial proceedings amounts to a deprivation of liberty without due process of law, based on the facts construed in plaintiff's favor, is a matter of law for this court to decide. Plaintiff's detention lasted eighteen days. During his detention he had access to a telephone, to visitors, and to the defendant Sheriff. The defendant Sheriff notified the court and the prosecuting attorney's office of plaintiff's presence in defendant's custody. The Sheriff also called several times to the prosecutor's office, inquiring about further court proceedings for plaintiff. Plaintiff spoke with an attorney during his detention about the delay in further judicial proceedings although he did not engage the attorney as counsel.

The Sheriff returned notice of the service of the bench warrant upon plaintiff to the Wells County Circuit Court one day after plaintiff turned himself in at the Wells County jail (July 1, 1981 [return of service]; June 30, 1981 [arrest of plaintiff]). Thus, the Sheriff notified the court which issued the warrant that the Sheriff had carried out the warrant and had the arrestee in custody. The Sheriff had, then, effectively brought plaintiff before the court, so that the court could proceed. The next move was for the court to make; the Sheriff from that point acted merely as custodian of plaintiff. The Sheriff was not the court and was under no legal duty to make the court schedule or hold further proceedings in plaintiff's case. *See* I.C. 35–1–8–1(a) (Burns Code Ed., Repl. 1979) (statute controlling sheriff's actions in 1981) (repealed 1982).[2] The Sheriff notified the prosecuting attorney's office on July 1, 1981 that he had the plaintiff in custody; he continued to notify and question the prosecuting attorney's office about plaintiff's presence in the Wells County jail and the possibility of a court date.

A detached and impartial judicial officer had determined probable cause existed prior to plaintiff's surrender to defendant's custody. Defendant acted upon a constitutionally valid and sufficient warrant. Defendant took all the steps he could to bring plaintiff before the Wells Circuit Court for further judicial proceedings. Defendant acted to protect the established statutory and constitutional rights of the plaintiff of which the Sheriff, as a reasonable person, knew. Plaintiff was neither mistreated nor abused while in defendant's custody. During his detention he had access to channels through which he could and did communicate his desire for further proceedings. Defendant did not thwart plaintiff's constitutional right of access to the courts. Plaintiff had a reasonable opportunity to seek and receive the assistance of attorneys. *Cf. Johnson*, 701 F.2d at 1207; *Lock v. Jenkins*, 641 F.2d 488, 498 (7th Cir.1981).

---

**2.** The only penalty assessable under I.C. 35–1–8–1(b) was a class B misdemeanor filable against

any "judge who recklessly failed to keep up the docket as required[.]"

 Eighteen days detention without access to channels of communication, or attorneys, or without a valid warrant would likely be a deprivation of liberty without due process of law, with or without protests of innocence. *Baker; Gerstein.* But, eighteen days detention, pursuant to a facially valid warrant, with access to a telephone, to an attorney, to visitors, and to the Sheriff, is not a deprivation of plaintiff's liberty without due process of law. No deprivation of any right secured by the Constitution and laws occurred; the Sheriff did not violate any of plaintiff's rights about which he reasonably should have known. Defendant is entitled to immunity for any section 1983 liability which might arise from the alleged events.

 There can be no doubt but that the objective good faith test of *Harlow* has been satisfied. The sheriff gave plaintiff access to a telephone, to an attorney, to visitors and to himself and his staff. The sheriff called the prosecutor several times asking about a court date for plaintiff. The sheriff effectively brought plaintiff before the court, putting it on notice further proceedings were needed. The sheriff did all that he could to insure plaintiff's constitutional rights, particularly plaintiff's right of access to court. The sheriff had no capacity or legal obligation to schedule court dates or to force the court or the prosecutor's office to set court dates.[3] The sheriff acted in good faith.

Finally, the fact that the charge was eventually dismissed does not cause the events to support a cause of action under section 1983.

Respondent's innocence of the charge contained in the warrant, while relevant to a tort claim of false imprisonment in most if not all jurisdictions, is largely irrelevant to his claim of deprivation of liberty without due process of law. The

Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted—indeed, for every suspect released.

*Baker,* 443 U.S. at 146, 99 S.Ct. at 2695 (footnote omitted). *See generally Johnson v. Miller,* 680 F.2d 39 (7th Cir.1982).

Turning to the state claims, this court finds that it will dismiss the pendent state claims because all federal claims will be dismissed prior to trial. *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *Graf v. Elgin, Joliet & Eastern Ry.,* 697 F.2d 771, 775 (7th Cir.1983); *Goldschmidt v. Patchett,* 686 F.2d 582, 585 (7th Cir. 1982). Plaintiff's state claims will be dismissed without prejudice.

### Conclusion

Accordingly, on the basis of the foregoing, defendant's Motion for Summary Judgment is hereby GRANTED. Plaintiff's pendent state claims are dismissed without prejudice.

---

**3.** The Sheriff stated in his deposition he did not attempt to bring plaintiff's body before the Wells Circuit Court prior to receiving a court date (which never occurred):

"The reason why that is because you have to get a Court date from the circuit court in order to bring a subject before the Wells Circuit Court. This has always been handled in

the past by the Prosecuting Attorney who makes the Court date for him and the Court to be available where the Court can handle it and where the Prosecutor can also be there at the same time so that's why I say that because if I call over there, *there's no use to take a subject there because the Judge won't see him."* Nyal Frantz Deposition, p. 14 (emphasis added).