ESTATE OF Carl R. EKLUND,[1] Plaintiff,

v.

Phillip T. HARDIMAN, Defendant.

No. 81 C 3135.

United States District Court, N.D. Illinois, E.D.

Feb. 1, 1984.

---

1. On June 24, 1983 this Court granted the motion of Eklund's attorneys to suggest Carl Eklund's death but deferred the contemporaneous motion to appoint one of the attorneys, William Wigoda, as temporary special administrator (that action of course is one for the state court system to take, for probate matters do not lie within the limits of federal jurisdiction). To this Court's knowledge no further action along those lines has been taken, so this opinion simply refers to the "Estate" as plaintiff (though it is not strictly speaking a legal entity).

County Department of Corrections ("Department"). Eklund seeks damages for Hardiman's failure to provide Eklund adequate medical care while Eklund was in Department's custody.

Hardiman now moves for summary judgment under Fed.R.Civ.P. ("Rule") 56 on the ground Eklund can prove no facts from which it could reasonably be inferred Hardiman should be held personally liable. Meanwhile Eklund seeks sanctions against Hardiman and his attorney for bad faith in filing the Rule 56 motion. For the reasons stated in this memorandum opinion and order, Hardiman's motion is granted and Eklund's is denied.

*Facts*

In response to Hardiman's Rule 56 motion Eklund recounts a harrowing tale of mistreatment and neglect at Department's hands. If true, that story would certainly establish an infringement of Eklund's right to essential medical care while incarcerated. Both parties however have concerned themselves exclusively with the grounds for holding Hardiman personally liable for that alleged infringement, so that Eklund has presented no *evidence* establishing the infringement in the first instance.[2]

William S. Wigoda, Wigoda & Wigoda, Chicago, Ill., for plaintiff.

David S. Allen, Asst. State's Atty., Richard M. Daley, Cook County State's Atty., Chicago, Ill., for defendant.

### MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Estate of Carl R. Eklund (for convenience, like the decedent himself, "Eklund") pursues this 42 U.S.C. § 1983 ("Section 1983") claim brought during Eklund's lifetime against Phillip T. Hardiman ("Hardiman"), Executive Director of the Cook

During the asserted period of mistreatment Hardiman himself had never met Eklund or heard from him in connection with his need for medical treatment or for any other reason (Eklund Dep. 358–60). Neither party has developed an evidentiary record as to whether Hardiman diligently enforced (or indeed even knew the contents of) Department's policy assuring adequate medical care for inmates (Department Gen. Order 80–3 (the "Order") at 1):

The Cook County Department of Corrections will provide all necessary and appropriate assistance to implement and facilitate the delivery of health care services to all inmates. Medical and correc-

**2.** In light of the result reached on the personal liability issue, this Court need not decide whether it was impermissible for Eklund thus to rest on his pleadings on this issue (in possible contravention of Rule 56(e)), or on the other side of the coin whether Hardiman could properly file a limited summary judgment motion without also effectively challenging the evidence on the merits.

tional staff will cooperate to [sic] the achievement of this goal.

\* \* \* \* \* \*

The Department of Corrections will ensure that inmates have access to health care personnel and facilities....

Nonetheless, because the evidence must be viewed in a light favorable to Eklund (*Egger v. Phillips,* 710 F.2d 292, 296 (7th Cir. 1983) (en banc)), this Court will indulge whatever pro-Eklund inferences may reasonably be drawn in those respects.[3]

Eklund's case for Hardiman's personal responsibility is built solely on the existence of ten lawsuits in this District Court alleging Department's failure to provide adequate medical care to its inmates. Those cases, Eklund claims, put Hardiman on notice sufficient to create a duty under Section 1983 to act to prevent the injury asserted here. That theory is problematic at best, because eight of the ten lawsuits were filed in 1982 or 1983—*after* Eklund's alleged mistreatment, indeed after this case was brought. Both pre-Eklund cases were dismissed without trial: *Barnes v. Hardiman,* No. 78 C 1133 (N.D.Ill. Aug. 31, 1982) and *William v. Elrod,* No. 77 C 1644 (N.D.Ill. Mar. 30, 1980). Both of them concerned alleged incidents occurring before Hardiman took his current position of Executive Director of the Department, and one suit (*Williams*) was filed before Hardiman took office. In fact *Williams* had been disposed of by summary judgment for defendants *before* Eklund's troubles with Department even arose.

### Summary Judgment[4]

■ Eklund's limited fact submission simply does not rise to the level required for Section 1983 liability, as exemplified by

*Lojuk v. Quandt,* 706 F.2d 1456, 1468 (7th Cir.1983); *Lenard v. Argento,* 699 F.2d 874, 885–86 (7th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 69, 78 L.Ed.2d 84 (1983); and *Crowder v. Lash,* 687 F.2d 996, 1005–06 (7th Cir.1982). Those cases have dealt with the ramifications of (or variants on) *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Our Court of Appeals' treatment of the operative principles is instructive, even though not squarely applicable, for current purposes.

*Monell* held Section 1983 liability cannot be foisted on a municipality simply through the operation of respondeat superior principles. It (436 U.S. at 694, 98 S.Ct. at 2037) required such liability rather to be grounded on some governmental act, omission or policy that breaches a duty running directly from the municipality to the plaintiff. *Cf. Means v. City of Chicago,* 535 F.Supp. 455, 462–63 (N.D.Ill.1982) (liability of municipality and supervisors determined with reference to general tort principles other than respondeat superior).

*Crowder,* affirming a directed verdict in favor of a state Commissioner of Corrections in a damage action charging unacceptable prison conditions, sought to clarify the limitations imposed by *Monell.* As in *Monell,* breach of a direct duty to the plaintiff suffices to create personal liability; and lacking that, breach of a duty to supervise may be sufficient if it meets defined standards far different from the simplistic notions underpinning respondeat superior (687 F.2d at 1005):

[A] defendant's direct participation in the deprivation is not required. An official satisfies the personal responsibility re-

**3.** Some of Eklund's alleged deprivation of medical care occurred before December 1, 1980, the Order's effective date. There has been no showing whether the Order superseded any similar directive or whether Hardiman was personally responsible for promulgation of the Order.

**4.** This opinion is being issued contemporaneously with the opinion in *Padilla v. d'Avis* and *Jones v. d'Avis,* 580 F.Supp. 403 (1984), containing another extended treatment of Section 1983 and of concepts closely linked to those treated

in this section. Though a superficial skimming of the two opinions might pose concerns as to their living side by side, in fact the analyses are wholly consistent both internally and externally. What accounts for the apparent surface tension—and also for the opinions' total reconcilability—is that *Padilla* deals with a Rule 12(b)(6) motion, while this opinion rules on a Rule 56 motion. Eklund like Padilla could well survive a motion to dismiss in *pleading* terms, but the necessary *proof* is entirely absent.

quirement of section 1983 if she acts or fails to act with a deliberate or reckless disregard of plaintiff's constitutional rights, or if the conduct causing the constitutional deprivation occurs at her direction or with her knowledge and consent.

Thus Eklund can establish liability either by showing Hardiman breached a direct duty to him or by meeting the elevated standards of the last-quoted sentence.

As for any theory Hardiman has breached a duty owing directly to Eklund, Eklund asks too much of the law and provides too little in the way of facts. He has shown no affirmative acts by Hardiman that might lead to liability.[5] Instead he relies on the wholly untenable premise that the filing of two lawsuits alleging inadequate medical care for inmates in Department's custody imposes on Hardiman a duty to Eklund personally to protect him from inadequate medical care. No such duty exists. Prisoner litigation is common, and two prior complaints do not render Hardiman an insurer as to the third one filed. It is unreasonable to expect Hardiman, charged with operation of a 4,500-inmate institution, to have a command of what kinds of claims those inmates file. And even if he did, he cannot fairly be required to have changed his behavior in response to only two lawsuits, one of which had been dismissed and the other of which had not yet proved itself to have been meritorious.

As to the theory Hardiman should be liable for "deliberate or reckless disregard" of Eklund's rights in the supervision of prison guards,[6] Eklund's showing cannot be distinguished from the showings of simple negligence in supervision that *Crowder, Lenard* and *Lojuk* held inadequate to support Section 1983 liability. *Crowder,* 687 F.2d at 1006 (emphasis in original) criticized the position of the plaintiff there because its logical result "would be to hold any well informed Commissioner of Corrections personally liable for damages flowing from *any* constitutional violation occurring at *any* jail within that Commissioner's jurisdiction." Eklund's case suffers from at least as great a weakness, for he has shown no facts from which it might be inferred Hardiman was guilty of a disregard of Eklund's rights with either of the pejorative adjectives "deliberate" or "reckless."[7] Were Eklund's position sustained, its logical consequence would cause Hardiman to be personally liable for *all* violations of the right to medical care within his jurisdiction—a result rejected by *Crowder.* In much the same way *Lenard,* 699 F.2d at 885 suggested:

> There can be liability only when there is an extremely high degree of culpability for inaction.

Nor can Eklund find solace in the passage from *Lojuk,* 706 F.2d at 1468 suggesting "a plan or pattern of incidents which should have put defendant ... on notice" of constitutional violations might support Section 1983 liability.[8] Eklund has failed as a matter of law to establish such a "pattern of incidents." As already stated, eight of the ten lawsuits he cites were filed after this one, and one of the other two had resulted in summary judgment for defendants before Eklund came on the scene.

---

5. One such affirmative act might be the promulgation of a policy that became the "moving force of the constitutional violation." *Monell,* 436 U.S. at 694, 98 S.Ct. at 2037. While the bare existence of the Order proves very little, it does give rise to an uncontroverted inference that Hardiman did not cause the claimed injury by adopting an unconstitutional policy. See *Lojuk,* 706 F.2d at 1468.

6. There is no hint whatever of the alternative grounds: any "direction" or "knowledge and consent" on Hardiman's part.

7. Even in *Crowder* the plaintiff was able to show *some* facts suggesting a disregard of his

individual claims. There unlike here plaintiff informed the Commissioner of Corrections "both personally and by letter 'of ... the deprivations he encountered.'" 687 F.2d at 1006.

8. This opinion need not pause to consider whether that passage is fully reconcilable with the passage in *Rizzo v. Goode,* 423 U.S. 362, 376, 96 S.Ct. 598, 606, 46 L.Ed.2d 561 (1976) (emphasis in original) finding *"failure* to act in the face of a statistical pattern" of constitutional violations insufficient to impose Section 1983 liability on the City of Philadelphia.

One swallow does not a summer make, and one pending lawsuit does not define any cognizable "pattern." Moreover, Eklund has not shown any similarities whatsoever between the facts of that one case and the facts of his claim that might support a finding of a "pattern" of constitutional violations.

In sum, Eklund has presented no evidence in opposition to summary judgment, instead asking only for judicial notice of ten lawsuits. As a result summary judgment must be granted in Hardiman's favor.

### Sanctions

██ Eklund seeks sanctions against Hardiman and his attorney, Assistant State's Attorney David Allen ("Allen"), for violation of a Rule 16 court order and for bad faith conduct of litigation in contravention of 28 U.S.C. § 1927 ("Section 1927"). Eklund's complaint is that Allen was working on his Rule 56 motion while Eklund's attorney, William S. Wigoda ("Wigoda"), was wasting his time working to meet an approaching deadline for completion of the Final Pretrial Order. Allen filed his motion November 7, 1983, while the Final Pretrial Order was to be submitted by November 18. Wigoda says the only good faith course of action would have been for Allen to inform Wigoda of his intent to seek summary judgment as soon as he decided to do so.

Bad faith is indeed the criterion for imposition of sanctions here. It alone can support such sanctions under either Section 1927 or the bad faith exception to the "American Rule" (that each party pays his own legal fees). See *McCandless v. Great Atlantic & Pacific Tea Co.*, 697 F.2d 198, 200–01 & n. 4 (7th Cir.1983). And no other potential grounds apply under the circumstances of this case:

1. Any argument Hardiman's motion was groundless obviously evaporates upon its being granted.

2. Absent bad faith, this Court is disinclined to penalize Allen's alleged violation of a court order in light of the facts next discussed.

On the issue of good or bad faith, Allen has explained that specific items in his schedule prevented him from devoting attention to the strategic question whether he should seek summary judgment until he began work on the Final Pretrial Order. In that respect he has produced the extensive work he actually did on the Final Pretrial Order, establishing beyond question he had no plan or scheme to waste Wigoda's time by ignoring that submission.

Wigoda's claim Allen was covertly working on the Rule 56 motion rather than the Final Pretrial Order during the week of October 24–31, when the two lawyers met regularly during the taking of depositions, does Allen's effort too much credit. It appears highly likely from the advanced stage of Allen's draft Final Pretrial Order that he marshalled nearly all the evidence and legal authorities he ultimately used in support of summary judgment while he was still working on that draft. Drafting of his motion (not to disparage its style or effectiveness) could have been accomplished in one or two work days. On such a short timetable, Allen cannot be faulted for not having called Wigoda at the start of his drafting process.[9]

Each of several reasons thus supports the inappropriateness of sanctions. Wigoda undoubtedly (and understandably) feels frustrated at having prepared the case toward trial, only to be met with a dispositive legal motion. But had it been otherwise—had Allen worked with Wigoda to complete the Final Pretrial Order and ready the case for trial—the litigation's end result would have been the same, with a far greater investment in time by Wigoda. Allen's lack of bad faith in leading to the summary judgment route is dispositive.

9. Even if it were established Allen knew on November 4 he would file a Rule 56 motion November 7 but decided not to call Wigoda because he would know soon enough anyway, that does not meet the "bad faith" standard.

*Conclusion*

There is no genuine issue as to any issue of material fact, and Hardiman is entitled to a judgment as a matter of law. In addition Eklund's counter-motion for sanctions is denied. This action is dismissed with prejudice.