Thomas RADICK, Plaintiff,

v.

Phillip HARDIMAN, John Doe 1, 2, and 3; Leon Cornelius; John Doe 4, 5, and 6; and Officer Warren LeBeaux, Defendants.

No. 80 C 4725.

United States District Court,
N.D. Illinois, E.D.

May 31, 1984.

Kris Daniel, Miquelon, Cotter & Daniel, Ltd., Chicago, Ill., for plaintiff.

David Allen, Asst. State's Atty., Chicago, Ill., for defendant Hardiman.

## MEMORANDUM OPINION

PRENTICE H. MARSHALL, District Judge.

This is a lawsuit by Thomas Radick under 42 U.S.C. § 1983 (1982) concerning violent attacks upon him by other inmates of the Cook County Jail and an alleged beating by a guard at the jail. Before the court is the motion of defendant Phillip Hardiman, Executive Director of the Cook County Department of Corrections ("CCDOC"), for summary judgment on the claims against him.

For present purposes, the following facts are not in dispute. Plaintiff was attacked, beaten, and raped by several other inmates on August 16, 1977. At that time he was assigned to Division 1 of the jail. After the attack, he was reassigned to Division 4. The parties agree that Division 1 houses "high security, high bond" inmates and that Division 4 houses the least aggressive types of inmates. Stipulation of Uncontested Facts ¶ 1.[1]

1. The stipulation of uncontested facts is part of the parties' final pretrial materials filed pursuant to order of court.

On October 18, 1977,[2] plaintiff was attacked and raped by two other inmates in the jail's gymnasium during his recreation period. After being treated medically, plaintiff met with Charles Fasano, a social worker; two investigators and a member of the John Howard Association, a prison "watchdog" group, with respect to the incident. Plaintiff related the details of the assault, and a memorandum was prepared and sent to Hardiman, among others.

On May 22, 1979, plaintiff was attacked in his cell by approximately four other inmates and severely beaten. He was treated at Cook County Hospital, where he gave a statement to an investigator. After that date, plaintiff was housed at Cermak Hospital, an institution connected with the CCDOC.

Plaintiff testified at his deposition that he sent three letters to Hardiman in which he requested to be placed in protective custody because of the beatings and threats he had received. Deposition of Thomas Radick at 64–65. Plaintiff was asked whether any of these letters were sent before the second assault; he stated that he did not remember. *Id.* at 6. Based on other deposition testimony by plaintiff, it is likely, though not absolutely certain, that the letters were sent, if at all, after the second assault. *See id.* at 65–66 (stating that the letters concerned, among other things, a meeting between plaintiff and a CCDOC official that took place after the second assault and the meeting with the social worker and the investigators). Hardiman denies receiving any letters.

Hardiman reviewed the report concerning the October 1977 assault. Deposition of Phillip Hardiman at 130–31. He also talked to Fasano, the social worker, about the report. *Id.* at 131, 144–45. Hardiman claims that he was not Executive Director at the time of the August 1977 incident; there is a factual dispute as to that point. In any event, Hardiman testified at his deposition that he did not review the report prepared concerning the August 1977 inci-

dent or speak to Radick or any CCDOC employees about that incident. However, after the October 1977 incident, Hardiman was told that "this was not [Radick's] first complaint." *Id.* at 120.

Hardiman recalled generally his conversation with Fasano:

[b]oth Fasano and myself felt that he was in the best division that was available, which was Division 4. It was the least aggressive, this type of thing. And we felt that we took his allegations with a grain of salt because they were so vague and general and there were never any witnesses, etcetera. So it was sort of hard to deal with one way or other.

*Id.* at 146. Hardiman testified that only he and Assistant CCDOC Director Robert Glotz had the authority to transfer an inmate to another division of the jail. *Id.* at 152. From Hardiman's perspective, as evidenced by his deposition testimony, plaintiff was in the most protective environment available. However, inmates are sometimes housed in Cermak Hospital for purposes of protection. *Id.* at 152–53. Thus, Hardiman could have ordered plaintiff's transfer to Cermak after the October 1977 incident.

Plaintiff has two theories of liability with respect to Hardiman. In count 1 of his second amended complaint, which concerns only the August 1977 assault, plaintiff alleges that Hardiman, though responsible for formulating rules and regulations concerning the jail, failed to provide guidelines governing procedures for protecting inmates against attacks from other inmates. Second Amended Complaint ¶¶ 3, 8. Plaintiff's trial brief, at page 14, suggests that plaintiff relies on this theory with respect to the other assaults as well. In count 2, plaintiff alleges that in light of the prior assaults and plaintiff's complaints, defendant's failure to protect plaintiff violated his constitutional rights.

Hardiman's motion for summary judgment did not mention the alleged failure to

---

**2.** The Second Amended Complaint gives October 17, 1978 as the date of the incident. However, the parties' stipulation of uncontested facts, ¶ 5, states that it was October 17, 1977.

promulgate adequate procedures but focused on Hardiman's alleged liability for the continued assaults after he allegedly was aware of plaintiff's situation, complaints, and requests. Hardiman raised the question of policies and procedures for the first time in his reply brief; we will deal with that matter in a moment.

■ With respect to Hardiman's alleged inaction after knowledge of the prior incidents, the continued danger to plaintiff, and plaintiff's complaints and request for protective custody, defendant places primary reliance on *Crowder v. Lash*, 687 F.2d 996 (7th Cir.1982). The plaintiff in *Crowder* complained of, among other things, conditions in the disciplinary segregation unit of the Indiana State Prison at Michigan City, Indiana. Among the defendants was Robert Heyne, Indiana's Commissioner of Corrections. Plaintiff relied primarily on Heyne's familiarity, through communications with his subordinates, with the conditions in the unit, and on the fact that plaintiff had informed Heyne personally and by letter of the conditions and the deprivations plaintiff had encountered. *Id.* at 1005–06. The court noted that to recover damages under § 1983, a plaintiff must show the defendant's personal responsibility for the claimed deprivation of constitutional rights. However, direct participation in the alleged deprivation is not required: the personal responsibility requirement is satisfied if the defendant "acts or fails to act with a deliberate or reckless disregard of plaintiff's constitutional rights, or if the conduct causing the constitutional deprivation occurs at her direction or with her knowledge and consent." *Id.* at 1005 (citing cases). The court rejected Crowder's theory of liability, stating that

> [t]he logical import of this theory ... would be to hold any well informed Commissioner of Corrections personally liable for damages flowing from *any* constitutional violation occurring at *any* jail within that Commissioner's jurisdiction. We believe that such a broad theory of liability is inconsistent with the personal

responsibility requirement for assessing damages against public officials in a section 1983 action.

*Id.* at 1006 (emphasis in original). The court also noted that the evidence did not indicate Heyne's personal participation in the deprivations or that any of the challenged actions occurred at his direction or with his express consent. *Id.* The court therefore upheld the trial court's granting of Heyne's motion for a directed verdict.

It is well established in this circuit that deliberate indifference to violent inmate attacks against other inmates gives rise to liability for violation of eighth amendment rights. *See Walsh v. Brewer*, 733 F.2d 473, 475, 476–77 (7th Cir.1984); *Little v. Walker*, 552 F.2d 193, 197 (7th Cir.1977) (discussion of immunity from liability for damages), *cert. denied*, 435 U.S. 932, 98 S.Ct. 1507, 55 L.Ed.2d 530 (1978); *Spence v. Staras*, 507 F.2d 554, 557 (7th Cir.1974). *Crowder*, of course, did not involve inmate attacks. Assuming that the holding in that case applies to cases involving inmate attacks, it does not require entry of summary judgment in Hardiman's favor here.

■ First, Hardiman does not occupy a position similar to that of a state director of corrections. The defendant in *Crowder* presumably was responsible for several correctional facilities; by contrast, on the basis of the evidence now before us it appears that Hardiman is responsible for only one custodial correctional facility, though that facility is comprised, like most jails and prisons, of different sections or divisions. *See* Hardiman Deposition at 34 ("Each jail—there's like six jails in one place, Divisions 1, 2, 3, 4, 5 and 6"), 40 (describing the divisions: high security/high bond; low bond; females; non-aggressive types of inmates; reception diagnostic center; high bond but low security inmates). On the present record, we cannot say that Hardiman should be considered in a manner any different from a warden of a jail or prison, and not like a director of several institutions. The rationale of *Crowder*, as best we can tell, is that a director of several institutions is too far

removed from conditions at a particular unit of a single institution within his general jurisdiction to be held responsible in damages for those conditions. That rationale does not require that Hardiman, who directs only one custodial institution, be absolved from liability for conditions in that institution. Further, as Hardiman was one of only two officials with the authority to order inter-division transfer of an inmate, to free him from liability in the circumstances of this case could leave an inmate such as plaintiff without a remedy.

Further, in the present case Hardiman's own testimony indicates that he was personally involved in the decision not to provide further protection for plaintiff after the October 1977 incident. Hardiman testified at his deposition that he knew of plaintiff's complaints and discussed them with Fasano, who participated in the investigation of the October 1977 assault. He further stated that he determined not to transfer plaintiff out of the division in which he was then housed, in part because he did not think plaintiff's allegations believable. This alone distinguishes the present case from *Crowder*, in which the defendant was not shown to have been personally involved in any decision relating to conditions in the unit where Crowder lived. It may be that Hardiman's decision, under the circumstances as they appear at trial, did not violate plaintiff's constitutional rights. However, we cannot now say that Hardiman is entitled to summary judgment on the ground of lack of personal responsibility for the wrong done to plaintiff, for the above evidence creates a genuine issue of fact as to whether Hardiman acted or failed to act with deliberate or reckless disregard of plaintiff's constitutional rights.[3] *See Crowder*, 687 F.2d at 1005.

■ We turn next to plaintiff's claim that Hardiman failed to promulgate adequate procedures for protecting inmates from assaults. In his reply brief, defendant raised for the first time the alleged absence of evidence supporting this theory of liability. If defendant wanted this matter adjudicated now, he should have raised it in the original motion. As he did not do so, plaintiff is entitled to respond before we consider the request for summary judgment on this point. We agree with defendant, however, that under *Lojuk v. Quandt*, 706 F.2d 1456, 1468 (7th Cir.1983), the failure of subordinates to follow a policy established by superiors does not give rise to a right of relief against the superiors.[4] Further, there is evidence that policies existed for dealing with inmate threats and violence. *See* Hardiman Deposition at 104–05. In order to resist summary judgment on the policy or practice question, plaintiff will be required to come forward with evidence contradicting Hardiman's characterization of the policy he promulgated or showing that the policy is inadequate in the sense that it encourages or results in deliberate or reckless indifference to the protection of inmates. Plaintiff is to respond to defendant's arguments on the "policy" issue within 21 days of entry of this order; defendant is to reply within 14 days thereafter. We will rule promptly by mail.

## SUPPLEMENTAL OPINION

■ The parties have now briefed an issue we identified as an open one in our May 31, 1984 opinion: whether plaintiff can maintain a claim against defendant Phillip Hardiman based on his alleged failure to promulgate adequate policies and procedures to protect inmates from attacks by fellow inmates. Hardiman testified at his

---

**3.** Defendant also relies on *Eklund v. Hardiman*, 580 F.Supp. 410 (N.D.Ill.1984) (Shadur, J.). In that case, which involved an alleged denial of medical treatment, plaintiff relied solely upon the filing of other lawsuits concerning other inmates to show Hardiman's responsibility. The court held that the filing of two lawsuits in a 4500-inmate institution was not sufficient to impose liability upon Hardiman. The present case is significantly different from *Eklund*, giv-

en Hardiman's direct knowledge of plaintiff's situation and his participation in the decision not to transfer plaintiff.

**4.** Matters might be different if a plaintiff alleged that the supervisory officials had a practice of not enforcing the policy. That is not an issue here, as no such practice is alleged.

deposition that correctional officers at the Cook County Department of Corrections ("CCDOC") jail are required to walk through the halls of the jail every half hour to check on inmates; that the Internal Investigations division of the CCDOC investigates reports on attacks on inmates; that a correctional officer must report an inmate's claim of a threat to his or her shift commander; and that "[m]any times if [such a report] is substantiated, we will move that [inmate]" to another unit or division. Hardiman also stated that if a correctional officer failed to follow these rules, he or she could be disciplined if it was shown that the disregard of an inmate was purposeful; however, he stated that discipline is rarely imposed, because in his view such violations rarely occur. *See* Hardiman Dep. at 104–11.

In our May 31 opinion, we stated that plaintiff would have to come forward with evidence contradicting Hardiman's characterization of the policy or with an argument that it is inadequate in order to survive summary judgment on the "policy" claim. Plaintiff does not argue that the "half-hour check" rule or the requirement of a "substantiated threat" for transfer are inadequate to protect inmates. Plaintiff now states that: Hardiman has admitted in the testimony quoted above that inmates are not always transferred even after substantiated threats; that pretrial detainees such as plaintiff are housed in the same divisions of the jail as are convicted offenders, including recidivists; and that there are no written policies or procedures concerning protection of inmates, as opposed to procedures for reporting actual incidents of violence.

The fact that Hardiman's policies are not written does not make them inadequate, absent some evidence that the lack of a written policy makes a difference in the conduct of correctional officers. No such evidence has been offered here. Next, though some courts have held that the housing of pretrial detainees with convicted offenders violates the constitution in some circumstances, *see, e.g., Jones v. Diamond,* 636 F.2d 1364, 1374, 1376 (5th Cir.) (en banc), *cert. dismissed,* 453 U.S. 950, 102 S.Ct. 27, 69 L.Ed.2d 1033 (1981), here plaintiff has offered no evidence and indeed has not argued that that practice caused his injuries.

Defendant disagrees with plaintiff's contention that defendant admitted in his deposition testimony that inmates who are the subject of substantiated threats nonetheless are not always transferred; however, that is one way the testimony, quoted above, can be read. Reading Hardiman's testimony the way plaintiff does, even if the threat were substantiated he might not have been transferred. If that is the correct reading of the testimony, it is arguable that Hardiman's policy was inadequate to protect inmates and that it was the cause of plaintiff's injury. Hardiman does not argue that any protection other than transfer is available in the case of a threat of violence.

However, Hardiman argues that according to plaintiff's own testimony, the threat in question occurred in the shower under the supervision of a guard. Plaintiff repeated the threat to a guard, who told him not to worry. Radick Dep. at 19–20. Plaintiff has not been able to determine who the guard was; there is no evidence that the guard reported the incident to his superiors. Defendant argues that the threat was "substantiated" because it occurred in the guard's presence, and that the guard violated Hardiman's policy by not reporting it. Accepting plaintiff's testimony as true, it cannot be said that the "gap" in Hardiman's transfer policy was a proximate cause of plaintiff's injury in the circumstances present here. Rather, the proximate cause of the injury was the guard's failure to report the incident. Thus, if the policy plaintiff challenges is the one Hardiman described, plaintiff fails to state a claim against Hardiman, since plaintiff's injury resulted from a violation of the policy. *See, e.g., Lojuk v. Quandt,* 706 F.2d 1456, 1468 (7th Cir.1983).

All that remains is plaintiff's allegation that Hardiman fails to enforce the policies

concerning inmate threats. Defendant argues, correctly, that failure to discipline officers for violating Hardiman's policy is not evidence that the policy does not exist or is inadequate; however, if plaintiff could show that the failure to discipline is a proximate cause of his injury (e.g., a tacit policy of condoning violations of the rule by guards), he would have stated a claim against Hardiman. *See, e.g., Eiland v. Hardesty,* 564 F.Supp. 930, 935–36 (N.D.Ill. 1982). *See also Lenard v. Argento,* 699 F.2d 874, 886 (7th Cir.) (liability exists where the evidence shows that the official "implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officer" and if the supervisor's inaction amounts to "deliberate indifference or tacit authorization" of unconstitutional conduct), *cert. denied,* —— U.S. ——, 104 S.Ct. 69, 78 L.Ed.2d 84 (1983) ). However, though Hardiman could not recall an instance of discipline for an officer's failure to report a threat, *see* Hardiman Dep. at 110, he also indicated that in his view an inmate's pleas could not go unreported, because in most cases the inmates in question report the threats to more than one guard. *Id.* at 109. Plaintiff has offered no affirmative evidence of a policy or practice of failing to discipline guards for not reporting inmate threats. Our assumptions that this must occur cannot substitute for evidence of threats that are not reported. The most plaintiff has shown is the single incident of failure to report involved here, and, we presume, failure to discipline the guard. A single incident is not enough to establish a claim against Hardiman for condoning guards' violations of his rules. *See, e.g., Powe v. City of Chicago,* 664 F.2d 639, 650–51 (7th Cir.1981). At the summary judgment stage, in the face of contrary evidence offered by defendant, plaintiff's mere allegation of a policy of the type suggested here is not enough.

For these reasons, plaintiff may not maintain a claim against defendant Hardiman based upon his alleged failure to establish adequate policies for the protection of inmates against assaults. Any such claim is dismissed. As we held in our May 31 opinion, plaintiff can go forward with his claim against Hardiman based on Hardiman's alleged personal involvement in plaintiff's difficulties.