65 F.3d 170
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Jerry KARRAKER, Plaintiff-Appellant,
v.
Howard A. PETERS, III, George E. Detella, Larry D. Hewitt,
et al. Defendants-Appellees.
 No. 94-3793.
 United States Court of Appeals, Seventh Circuit.
 Argued June 1, 1995.
Decided Aug. 18, 1995.
 
 Before COFFEY, FLAUM and MANION, Circuit Judges.
 
 ORDER
 
 1
 Plaintiff Karraker appeals the district court's grant of summary judgment on his 42 U.S.C. Sec. 1983 claim alleging that the district court erred in finding that the Plaintiff had failed to establish either: 1) that his condition constituted a serious medical need, or 2) that the Defendants acted with deliberate indifference to that need. For the reasons stated in the attached well-reasoned district court opinion of November 1, 1994, we AFFIRM.
 
 ATTACHMENT
 UNITED STATES DISTRICT COURT
 CENTRAL DISTRICT OF ILLINOIS
 
 2
 JERRY KARRAKER,
 
 
 3
 Plaintiff,
 
 
 4
 vs.
 
 
 5
 HOWARD A. PETERS, et al.,
 
 
 6
 Defendants.
 
 No. 92-2277
 ORDER
 
 7
 BAKER, District Judge.
 
 
 8
 The plaintiff, a state prisoner, has brought this civil rights action pursuant to 42 U.S.C. Sec. 1983. The plaintiff claims that the defendants, various correctional and health officials at the Danville Correctional Center, violated the plaintiff's constitutional rights by acting with deliberate indifference to his serious medical needs. More specifically, the plaintiff alleges that the defendants denied him necessary medical treatment for injuries sustained prior to the plaintiff's incarceration. This matter is before the court for consideration of the defendants' motion for summary judgment. For the reasons stated in this order, the motion will be allowed.
 
 
 9
 Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Herman v. National Broadcasting Co., Inc., 744 F.2d 604, 607 (7th Cir.1984), cert. denied, 470 U.S. 1028 (1985). In determining whether factual issues exist, the court must view all the evidence in the light most favorable to the non-moving party. Beraha v. Baxter Health Corp., 956 F.2d 1436, 1440 (7th Cir.1992).
 
 
 10
 However, Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party there is no 'genuine' issue for trial." Mechnig v. Sears, Roebuck & Co., 864 F.2d 1359 (7th Cir.1988). A "metaphysical doubt" will not suffice. Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Disputed facts are material only if they might affect the outcome of the suit. First Ind. Bank v. Baker, 957 F.2d 506, 507-08 (7th Cir.1992).
 
 FACTS
 
 11
 The plaintiff, Jerry Karraker, is a state prisoner, confined at the Danville Correctional Center at all times relevant to this action. The defendant George DeTella is the prison's warden. The defendant Marvin Ehrhardt is a staff physician. The defendant Sue O'Neill is the prison's health care administrator. The defendant Larry Hewitt is a health services coordinator for the Illinois Department of Corrections.
 
 
 12
 The following facts will be accepted as uncontested for purposes of this motion:[1] On April 29, 1991 (prior to his incarceration) the plaintiff had a very serious, work-related accident. The plaintiff was thrown from a loading machine and a piece of machinery landed on top of him. The plaintiff's upper right side and arm were crushed, in addition to other injuries.
 
 
 13
 The plaintiff remained in the hospital for approximately seven weeks. He required extensive treatment, including several surgeries. Following his discharge from the hospital, the plaintiff remained bedridden for another three weeks. The plaintiff attended physical therapy sessions eleven times during July and August.
 
 
 14
 On October 18, 1991, the plaintiff was arrested for possession of stolen property and various weapons charges. He was placed in the Kankakee County Jail pending trial.[2] The plaintiff thereafter was convicted, sentenced and turned over to the custody of the Illinois Department of Corrections. The plaintiff was housed briefly at the Joliet Correctional Center, from March 2, 1992 to March 13, 1992. He then was transferred to the Danville Correctional Center, where he remained for approximately seven months. The plaintiff complained of constant pain and filled out request slips to see a physician almost every day.
 
 
 15
 On March 16, 1992, three days after the plaintiff's transfer, his medical charts were reviewed. The following day, the plaintiff was examined by both a doctor and nurse. The physician prescribed painkillers and scheduled the plaintiff for an appointment with the defendant Ehrhardt.
 
 
 16
 On March 23, 1992, the defendant Ehrhardt examined the plaintiff for the first time. Ehrhardt requested records of the plaintiff's medical history from his outside hospital, ordered that x-rays be taken, and referred the plaintiff to an orthopedic specialist. X-rays of the plaintiff's arm were taken the same day.
 
 
 17
 On May 12, 1992, during a routine trip to the Danville Correctional Center, the defendant Hewitt spoke with the plaintiff, who complained of dissatisfaction with his medical care. In response, Hewitt met with the health care unit administrator [the defendant O'Neill] to discuss the plaintiff's concerns. O'Neill informed Hewitt that the plaintiff already was scheduled to see a specialist.
 
 
 18
 O'Neill's position consisted of administrative duties rather than "hands-on" nursing. O'Neill was responsible for "quality assurance," but had no involvement in treating the plaintiff. At most, she may have scheduled him for treatment.
 
 
 19
 On May 20, 1992, Ehrhardt examined the plaintiff and conducted tests on his arm. Ehrhardt prescribed pain medication and placed the plaintiff on the "medically unassigned" list, relieving him of any work obligations.
 
 
 20
 In July of 1992, the plaintiff again contacted Hewitt requesting treatment. Hewitt telephoned O'Neill, who verified that the plaintiff had, in fact, seen an orthopedic surgeon on July 9, 1992.
 
 
 21
 The plaintiff wrote Hewitt once more, requesting to see a neurologist. Hewitt contacted O'Neill, who agreed to schedule the plaintiff to see a neurologist. On August 9, 1992, the plaintiff saw a neurologist, who said that he would talk to Ehrhardt about treatment. The neurologist and Ehrhardt evidently never spoke to each other.
 
 
 22
 On August 25, 1992, the plaintiff saw a nurse to request a low bunk permit because of his arm. He also requested to see Dr. Ehrhardt regarding therapy for his arm.
 
 
 23
 On September 25, 1992, the plaintiff met with Ehrhardt, who prescribed medication for his asthma but did not treat his arm injury. Ehrhardt did not see the plaintiff again after September 25, 1992. The plaintiff was released from prison on October 14, 1992.
 
 DISCUSSION
 
 24
 No material facts are in dispute, and the court concludes that the defendants are entitled to judgment as a matter of law. Even viewing the record in the light most favorable to the plaintiff, no reasonable person could find that the defendants acted with deliberate indifference to his serious medical needs. The plaintiff was afforded constitutionally adequate medical care.
 
 
 25
 In order for a prison inmate to prevail under 42 U.S.C. Sec. 1983 on a claim of medical mistreatment, he must show "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). The standard of deliberate indifference was recently reaffirmed in Hudson v. McMillian, 112 S.Ct. 995, 1000 (1992) ("society does not expect that prisoners will have unqualified access to health care"); see also Wilson v. Seiter, 111 S.Ct. 2321 (1991). The indifference to medical needs must be substantial; inadequate treatment due to negligence, inadvertence or differences in judgment between an inmate and medical personnel do not rise to the level of constitutional violations. Estelle; Hughes v. Joliet Correctional Center, 931 F.2d 425, 428 (7th Cir.1991) (if the claim is merely medical malpractice, it should be brought in state court). Deliberate indifference may be demonstrated either by actual intent or by reckless disregard. See Miltier v. Bourn, 896 F.2d 848, 851 (4th Cir.1990).
 
 
 26
 In the case at bar, the plaintiff has not made a triable showing that he suffered from any "serious" medical condition. In considering whether a medical need is "serious," the court considers such factors as the severity of the medical problem, the potential for harm if medical care is denied or delayed, and whether any such harm actually resulted from the lack of medical attention. See Burns v. Head Jailer of LaSalle County Jail, 576 F.Supp. 618, 620 (N.D.Ill.1984); see also Thomas v. Pate, 493 F.2d 151, 158 (7th Cir.1974), cert. denied, 419 U.S. 813 (1974). A medical condition is deemed to be serious if it may be "life threatening or pose[s] a risk of needless pain or lingering disability if not treated at once." Davis v. Jones, 936 F.2d 971, 972 (7th Cir.1991).
 
 
 27
 Notwithstanding the severity of the plaintiff's original injuries, it is doubtful whether his impaired arm still constituted a "serious" medical need by the time of his incarceration in prison. As noted in Karraker v. Kankakee, Case No. 92-2241, Order of July 21, 1994 at page 8, the plaintiff's surgeries had been successful, his arm healed well, and by August, 1991, the plaintiff himself did not see fit to undergo medical treatment nor to complete physical therapy. Only after he was incarcerated, months later, did the plaintiff decide he had an urgent need for specialized medical care; health care providers at the jail disagreed. The plaintiff arrived at the Danville Correctional Center on March 13, 1992, almost a year after his accident. The record does not support the plaintiff's position that his injured arm constituted a medical need of the gravity contemplated by Estelle.
 
 
 28
 Even assuming (without finding) that the plaintiff's condition did constitute a "serious" medical need, the record fails to raise a triable issue as to whether the defendants acted with deliberate indifference. The plaintiff was given medical attention immediately after his transfer to the prison at Danville; he continued to receive treatment (despite some lapses) throughout his confinement at Danville. The plaintiff saw specialists, he received medication, and diagnostic techniques such as x-rays were employed. Furthermore, the plaintiff concedes that he could have performed "self" physical therapy in his cell, for which he had received instructions while in jail. The plaintiff's quibble over prescribed treatment actually received is not actionable under the Civil Rights Act. Benson v. Cady, 761 F.2d 335, 341 (7th Cir.1985).
 
 
 29
 A prisoner's dissatisfaction with a doctor's prescribed course of treatment does not give rise to a constitutional claim unless the medical treatment is so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate the prisoner's condition.
 
 
 30
 Thomas v. Pate, 493 F.2d 151, 158 (7th Cir.1984). While the defendants may have done little to advance the plaintiff's recovery process, they afforded him constitutionally adequate care.
 
 
 31
 Even if Danville's health care staff could have provided more comprehensive treatment, the matter does not rise to the level of a constitutional violation. While the court questions why Ehrhardt never implemented the recommendations made by specialists, nothing in the record suggests that the defendants acted with criminal recklessness, and medical malpractice is not a proper basis for a lawsuit under 42 U.S.C. Sec. 1983. Estelle, 429 U.S. at 106; Holmes v. Sheahan, 930 F.2d 1196, 1200 (7th Cir.1991). The plaintiff was not constitutionally entitled to unqualified and unlimited access to medical services, but rather only to reasonable and necessary medical care. The defendants' level of care was not "so clearly inadequate as to amount to a refusal to provide essential care." See Thomas v. Pate, 493 F.2d at 158.
 
 
 32
 Regardless of whether the plaintiff's medical care was deficient, the defendant O'Neill could not be held liable. O'Neill did not approve or ratify any prescribed course of treatment in her capacity as the Health Care Unit Administrator; she merely scheduled patients to see the physician, upon request. Because O'Neill was not personally involved in providing the plaintiff's health care, she cannot be held responsible for any alleged mistreatment.[3]
 
 
 33
 Likewise, Larry Hewitt, the Southern Regional Health Services Coordinator for the Illinois Department of Corrections, was not directly involved in the provision of health care. Nor can he be said to have acted with deliberate indifference: the plaintiff contacted Hewitt three times, and each time Hewitt contacted O'Neill to make sure the plaintiff's requests for medical care were honored.
 
 
 34
 Finally, Warden DeTella cannot be held liable "for failing to take corrective action." The doctrine of respondeat superior (supervisory liability) does not apply to actions filed under 42 U.S.C. Sec. 1983. See Wolf-Lillie v. Sonquist, 699 F.2d 864, 869 (7th Cir.1983). Prison administrators, having no medical expertise, must rely on those with such medical expertise to assess the needs of prisoners and initiate treatment. McEachern v. Civiletti, 502 F.Supp. 532, 534 (N.D.Ill.1980); see also Eklund v. Hardiman, 580 F.Supp. 410, 412 (N.D.Ill.1984). Because the plaintiff was being treated by medical personnel, Warden DeTella is insulated from any Eighth Amendment claim.
 
 
 35
 In sum, no material facts are in dispute and the court concludes that the defendants are entitled to judgment as a matter of law. The record does not support a finding that the plaintiff had a "serious" medical need; in any case, no reasonable person could find that the defendants acted with deliberate indifference. The plaintiff received constitutionally adequate medical care. Regardless, the administrator defendants could not be held liable for the plaintiff's treatment. Accordingly, the defendants' motion for summary judgment will be granted.
 
 
 36
 IT IS THEREFORE ORDERED that the defendants' motion for summary judgment (docket # 27) is allowed. The Clerk of the court is directed to enter judgment in favor of the defendants and against the plaintiff pursuant to Fed.R.Civ.P. 56. The case is terminated. The parties are to bear their own costs.
 
 
 37
 Enter this 1st day of November, 1994.
 
 
 
 [1]
 The defendants, in fact, dispute certain allegations, such as that they made unkind remarks and told the plaintiff he would have to pay to see a doctor. However, the court adopts the plaintiff's account for purposes of this motion. Summary judgment may be granted even if facts are in dispute, so long as those facts are not outcome determinative. Wildman v. Edelson, 859 F.2d 553, 556 (7th Cir.1988)
 
 
 [2]
 The plaintiff filed a separate lawsuit regarding an alleged denial of proper medical care while in jail. This court already has granted judgment in favor of the defendants and against the plaintiff in that case. Karraker v. Kankakee County Sheriff's Dept., et al., Case Number 92-2241, Order of July 21, 1994. That case is currently on appeal
 
 
 [3]
 Even accepting as true that O'Neill and DeTella told the plaintiff, in effect, that he would not be treated because his injury had occurred prior to his incarceration and because he would not be in prison very long, their callous remarks do not establish liability. Those individuals were not involved in the plaintiff's medical treatment